**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALFONSO MANUEL BLAKE,
*Petitioner-Appellant*,

v.

RENEE BAKER,
*Respondent-Appellee.*

No. 12-15522

D.C. No.
3:09-cv-00327-RCJ-
WGC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
November 4, 2013—San Francisco, California

Filed March 14, 2014

Before:  A. Wallace Tashima, William A. Fletcher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Tashima

**SUMMARY**[*]

### Habeas Corpus

The panel reversed the district court's denial of a motion to stay and abey a mixed 28 U.S.C. § 2254 habeas corpus petition pending exhaustion of petitioner's claims in state court, and remanded.

The district court denied a stay and abeyance on the sole ground that petitioner did not establish good cause under *Rhines v. Weber*, 544 U.S. 269 (2005), for his failure to exhaust. The panel held that the *Rhines* standard for cause based on ineffective assistance of counsel is not any more demanding than the cause standard articulated in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and that petitioner met that standard. The panel remanded with instructions to grant the stay and abeyance and for further proceedings.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Tiffani D. Hurst (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Michael Pescetta, Albert Sieber, and Randolph Fiedler, Assistant Federal Public Defenders, Las Vegas, Nevada, for Petitioner-Appellant.

Heather D. Procter (argued), Senior Deputy Attorney General; Catherine Cortez Masto, Attorney General, Carson City, Nevada, for Respondent-Appellee.

## OPINION

TASHIMA, Circuit Judge:

Alfonso Manuel Blake, a state prisoner, filed a habeas corpus petition under 28 U.S.C. § 2254 based on, *inter alia*, alleged ineffective assistance of trial counsel ("IAC"). Because this claim was not exhausted, Blake moved for a stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), so that he could return to state court and exhaust this claim. The district court denied the motion. We must decide whether Blake's explanation for failure to exhaust this claim met the "good cause" requirement of *Rhines*. Because we answer that question in the affirmative, we reverse and remand.

## I.

Blake was convicted in Nevada state court of two counts of first-degree murder with the use of a deadly weapon and

sentenced to death.**[1]**    The convictions were affirmed on appeal.  Blake then filed a state habeas petition, which was denied.  The denial was affirmed on appeal.

Blake then timely filed this federal petition.    In his amended petition, he argued for the first time that, among other things, his trial counsel was ineffective for failing to discover and present to the jury evidence of Blake's abusive upbringing and history of mental illness.**[2]**

Blake's amended petition was a "mixed petition," *i.e.*, it contained both exhausted and unexhausted claims.  As such, it was subject to dismissal under *Rose v. Lundy*, 455 U.S. 509 (1982).  Blake thereafter filed a *Rhines* motion for a stay and abeyance of his mixed petition so that he could return to state court fully to exhaust his unexhausted claims.  He argued that he had good cause for failing to exhaust his trial-counsel IAC claim because he received ineffective assistance of counsel during state post-conviction proceedings.  He argued that his state post-conviction counsel was ineffective because she "failed to conduct any independent investigation" and discover "easily identifi[able]" claims that Blake had endured "outrageous and severe sexual, physical and emotional abuse as a child" and "suffered from organic brain damage and psychological disorders."  In other words, Blake argued that

---

**[1]** Blake was also convicted of one count of attempted murder with the use of a deadly weapon, for which he was sentenced to two consecutive terms of 240 months.

**[2]** Blake asserts that, during the penalty phase of his trial, the jury heard only "that he was a happy, talented, good, generous and encouraging person who had good times growing up and loved God but had made a huge mistake; and that family members would benefit by continued communication with him."

his state post-conviction counsel was ineffective for failing to discover the same evidence underlying his trial-counsel IAC claim.

The district court denied Blake's motion for a stay and abeyance on the sole ground that Blake failed to establish good cause. It held that IAC by post-conviction counsel did not constitute good cause because it was an excuse "that could be raised in virtually every case." In denying a subsequent motion for reconsideration, the district court held that Blake's excuse was "too generic" and that, as a matter of law, "*Strickland*-type claim[s] of ineffective assistance of post-conviction counsel cannot constitute good cause for failing to exhaust."

The district court ordered Blake to abandon his unexhausted claims or face dismissal under *Lundy*. Blake elected not to dismiss his unexhausted claims and the district court dismissed his petition. Blake timely appeals.

## II.

We review the district court's denial of a stay and abeyance for abuse of discretion. *Rhines*, 544 U.S. at 278–79.

## III.

In *Rhines*, the Supreme Court held that when a habeas petitioner files a mixed petition, a district court may stay the petition and hold it in abeyance to allow the petitioner to return to state court and present his unexhausted claims. *Id.* at 275–76. Before *Rhines*, the Supreme Court had adopted a rule of "total exhaustion," requiring that all claims in a

federal habeas petition be exhausted in state court before a federal court could act on the petition. *See Lundy*, 455 U.S. at 522. Under *Lundy*, a district court had to "dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.* at 510.

The *Lundy* rule, however, became problematic once Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). "AEDPA preserved *Lundy*'s total exhaustion requirement," but also "imposed a 1-year statute of limitations on the filing of federal petitions." *Rhines*, 544 U.S. at 274 (citing 28 U.S.C. §§ 2254(b)(1)(A), 2244(d)). "As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 275.

Responding to "the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike," *id.* at 275, the Court in *Rhines* approved the use of a stay and abeyance in "limited circumstances," *id.* at 277, stating that:

> it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if [1] the petitioner had good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that

the petitioner engaged in intentionally dilatory litigation tactics.

*Id.* at 278. The Court explained that restricting the availability of the stay-and-abeyance procedure to only those cases that satisfy this three-part test protects AEDPA's "twin purposes" of promoting finality of sentences and encouraging petitioners to exhaust their claims in state court before filing in federal court. *Id.* at 277–78.

Here, the district court denied Blake's motion for a stay and abeyance on the sole ground that Blake did not establish good cause for his failure to exhaust – the first prong of the *Rhines* test. The State agreed at oral argument that the second and third prongs of the *Rhines* test had been established. Thus, the only issue before us is whether Blake made a sufficient showing of good cause.

## A.

There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust. In *Rhines*, the Supreme Court did not explain the standard with precision. *See* 544 U.S. at 275–78. The Court has since addressed the meaning of good cause in only one other case, recognizing in dicta that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" to excuse his failure to exhaust. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citing *Rhines*, 544 U.S. at 278).

Similarly, our cases on the meaning of good cause under *Rhines* are also sparse. In *Jackson v. Roe*, 425 F.3d 654 (9th Cir. 2005), we held that good cause does not require a

showing of "extraordinary circumstances." *Id.* at 661–62. In *Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008), we held that a petitioner did not establish good cause simply by alleging that he was "under the impression" that his claim was exhausted. *Id.* at 1024. We explained that accepting as good cause the mere "lack of knowledge" that a claim was exhausted "would render stay-and-abey orders routine" because "virtually every habeas petitioner" represented by counsel could assert that he was unaware of his attorney's failure to exhaust. *Id.*

Notably, neither *Jackson* nor *Wooten* addresses whether IAC by post-conviction counsel could amount to good cause under *Rhines*. The only time that either opinion discusses IAC in the *Rhines'* good cause context is when this court noted that the petitioner in *Wooten* had not "developed any ineffective assistance of counsel argument." 540 F.3d at 1024 n.2. In fact, no circuit has directly addressed whether state post-conviction IAC can constitute good cause under *Rhines*. *Wagner v. Smith*, 581 F.3d 410 (6th Cir. 2009), perhaps comes the closest, recognizing in dicta that a petitioner "seem[ed] to have a compelling 'good cause' argument that his appellate counsel was ineffective for failing to raise [the petitioner's unexhausted] claims on appeal." *Id.* at 419 nn.4, 5. We now consider the question.

## B.

In rejecting Blake's good cause argument, the district court analogized it to the good cause theory rejected in *Wooten*:

> Like the petitioner's claim in *Wooten* that he
> was under the impression that counsel had

raised unexhausted claims, Blake's justification—i.e., that his post-conviction counsel performed ineffectively in failing to raise unexhausted claims—is one that could be raised in virtually every case.

This analogy misinterprets *Wooten* and ignores the equitable nature of the good cause standard. In *Wooten*, we held that a mere "lack of knowledge" did not constitute good cause because "virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim." 540 F.3d at 1024. In other words, we held that unspecific, unsupported excuses for failing to exhaust – such as unjustified ignorance – did not satisfy the good cause requirement. We did not hold that the good cause inquiry involves considering how frequently a particular type of excuse, viewed in the abstract, could be raised.

On reconsideration, the district court's rejection of Blake's good cause contention was even more categorical. It held that, as a matter of law, ineffective assistance of post-conviction counsel can *never* constitute good cause under *Rhines*. Thus, the district court doubly erred: first, by measuring good cause by considering only how often the type of good cause Blake asserted could be raised; and second, by holding categorically that post-conviction IAC could *never* constitute good cause.

It is true that a "stay and abeyance should be available only in limited circumstances"; routinely granting stays would undermine the AEDPA's goals of encouraging finality and streamlining federal habeas proceedings. *Rhines*, 544 U.S. at 277. But this concern does not require limiting

the definition of good cause to only those excuses that arise infrequently. Factors (2) and (3) of the *Rhines* test itself – that the "unexhausted claims are potentially meritorious," and that "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics," *id.* at 278 – are designed, together with the first factor, to ensure that the *Rhines* stay and abeyance is not, contrary to the district court's concern, available "in virtually every case." When this three-part test is satisfied, there is no overriding concern of further limiting the availability of a stay and abeyance because "[i]n such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.*

## C.

The good cause element is the equitable component of the *Rhines* test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure. *See Pace*, 544 U.S. at 416 ("A petitioner's *reasonable* confusion . . . will ordinarily constitute 'good cause' [under *Rhines*] . . . ." (emphasis added)).[3] An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure

---

[3] Although this guidance is dictum, we note that "Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

to exhaust. In *Wooten*, for example, the petitioner's excuse that he was "under the impression" that his claim was exhausted was not a reasonable excuse because no evidence indicated that the petitioner's ignorance was justified. To the contrary, the petitioner's attorney sent him a copy of his state petition, which did not mention the unexhausted claim, and the petitioner did not argue that his attorney provided ineffective assistance for failing to include the claim. 540 F.3d at 1024 n.2; *see also King v. Ryan*, 564 F.3d 1133, 1138 (9th Cir. 2009) (holding that the district court did not abuse its discretion in finding that the petitioner did not establish good cause when his factual allegations were "insufficiently detailed").

While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will. Blake argued that he failed to exhaust his trial-counsel IAC claim because his state post-conviction counsel "failed to conduct any independent investigation or retain experts in order to" discover the facts underlying his trial-counsel IAC claim; namely, evidence that Blake "was subjected to outrageous and severe sexual, physical and emotional abuse as a child," and "suffered from organic brain damage and psychological disorders."

Blake supported his good cause argument with evidence of his abusive upbringing and history of mental illness, compiled by his federal post-conviction counsel.[4]    For

---

[4] The State argues that "[t]he only factual arguments regarding ineffective assistance of post-conviction counsel that are properly before this Court are the limited, generic allegations contained in the original motion for stay," not the arguments and supplemental evidence provided

example, Blake provided a neuropsychological and psychological evaluation report that highlighted "numerous neuropsychiatric and psychiatric conditions [Blake suffered from] at the time of the homicides," none of which was presented to the jury or to the state court.[5]

Blake also submitted a declaration by the private investigator hired by his state post-conviction attorney stating that within a week of receiving "thousands of pages of discovery on Blake's case," Blake's state post-conviction attorney told the investigator "that [his] services were no longer needed." The investigator declared that he "did not have a chance to speak with a single witness on Blake's case because it was over before [he] finished [his] review of the discovery materials."

Blake also provided thirteen declarations from Blake's family and friends. Most of them described the abhorrent conditions of Blake's upbringing and family history, in

---

in Blake's motion for reconsideration. *See Christie v. Iopa*, 176 F.3d 1231, 1239 n.5 (9th Cir. 1999) (refusing to "consider evidence or arguments presented for the first time in a motion for reconsideration"). Even without considering the additional evidence presented in Blake's motion for reconsideration, however, Blake sufficiently set forth good cause in his motion for a stay and in his federal habeas petition, which he incorporated into his motion. *See Bolin v. McDaniel*, No. 3:07-CV-00481-RLH-VPC, 2011 WL 1750698, at *3 n.2 (D. Nev. May 6, 2011) (noting that in its good cause analysis, the court considered allegations made in the petitioner's "amended habeas petition, wherein he [sought] relief based on state post-conviction counsel's allegedly ineffective performance").

[5] The report concluded that Blake suffered from, and continues to suffer from, "Tourette's Disorder; Dementia/Chronic Brain Damage; Organic Personality Syndrome/Personality Change due to Brain Damage; Panic Disorder; and Obsessive Compulsive Disorder."

extensive and gruesome detail. None of these witnesses was contacted by Blake's state post-conviction attorney.[6] And no evidence of Blake's background was ever presented to the Nevada state courts. This is a sufficient showing that Blake's state post-conviction counsel's performance was defective under the standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In light of that showing, we hold that the district court abused its discretion in concluding that Blake had failed to establish good cause for his failure to exhaust. Blake's showing of good cause was not a bare allegation of state post-conviction IAC, but a concrete and reasonable excuse, supported by evidence that his state post-conviction counsel failed to discover, investigate, and present to the state courts the readily available evidence of Blake's abusive upbringing and compromised mental condition.

Our holding, that IAC by post-conviction counsel can be good cause for a *Rhines* stay, is consistent with and supported by the Supreme Court's recent opinion in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), in which it established a limited exception to the rule of *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), that IAC by state post-conviction counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. We believe that good cause under *Rhines*, when based on IAC, cannot be any more demanding than a showing of cause under *Martinez* to excuse

---

[6] Three individuals – two of Blake's siblings and Blake's ex-girlfriend – were contacted by Blake's *trial* attorney, but they were never asked about Blake's familial, social, or medical background.

state procedural default.[7]   Unlike a successful showing of cause under *Coleman* and *Martinez*, an IAC-based showing of good cause under *Rhines* only permits a petitioner to return to state court – not bypass the state court as would be the case under *Coleman* – to exhaust his unexhausted claims.  Because a *Rhines* stay and abeyance does not undercut the interests of comity and federalism embedded in our habeas jurisprudence, a *Rhines* petitioner arguing IAC-based good cause is not required to make any stronger a showing of cause than a *Coleman/Martinez* petitioner.   *Id.* at 1318 (stating that "cause" is established when a petitioner's post-conviction counsel is "ineffective under the standards of *Strickland*"); *see also Detrich v. Ryan*, 740 F.3d 1237, 1243–45 (9th Cir. 2013) (en banc) (plurality opinion) (discussing the showing of "cause" required under *Martinez* and *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013)).

In sum, we hold that the *Rhines* standard for IAC-based cause is not any more demanding than the cause standard articulated in *Martinez*.   The district court applied an erroneous legal standard in concluding that Blake failed to meet the *Rhines* good cause standard.   It therefore abused its discretion in denying a stay and abeyance.  *See United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ." (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405

---

[7] Because Blake meets the *Coleman* showing of cause, we leave for another day whether some lesser showing will suffice to show good cause under *Rhines*.  The Supreme Court's statement in *Pace*, 544 U.S. at 416, however, that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" under *Rhines*, suggests that this standard is, indeed, lesser than the cause standard discussed in *Coleman* and applied in *Martinez*.

(1990))). Here, Blake's showing of state post-conviction IAC satisfies the *Rhines* good cause standard.

## IV.

The judgment of the district court dismissing Blake's habeas petition is reversed and the case is remanded with instructions to grant the stay and abeyance and for further proceedings consistent with this opinion.[8]

**REVERSED and REMANDED with directions.**

---

[8] Because of our disposition, we need not reach Blake's challenge to the district court's denial of his Rule 60(b) motion for relief from judgment.