**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERRY D. DIXON,<br>*Petitioner-Appellant*,<br><br>v.<br><br>RENEE BAKER, Warden; NEVADA<br>ATTORNEY GENERAL,<br>*Respondents-Appellees.* | No. 14-16644<br><br>D.C. No.<br>3:13-cv-00248-<br>RCJ-WGC<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted November 18, 2016
San Francisco, California

Filed February 2, 2017

Before: Alex Kozinski, Ronald Lee Gilman,[*]
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Gilman

---

**\*** The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's judgment dismissing Nevada state prisoner Terry Dixon's habeas corpus petition and remanded with instructions to enter a stay while Dixon pursues his unexhausted claims in state court.

The panel held that because Dixon's petition was only partially exhausted, he should have been allowed to delete the unexhausted claims and proceed on the exhausted claims if his motion to stay and abey his federal case were denied. The panel did not remand the case, however, because the district court should have granted the motion for a stay since (1) Dixon, who was not represented by counsel in his state post-conviction proceeding, has established good cause for his failure to exhaust; (2) at least one of his unexhausted claims is not plainly meritless; and (3) the state concedes that he has not engaged in intentionally dilatory litigation tactics.

### COUNSEL

Ryan Norwood (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada, for Petitioner-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Karen A. Whelan (argued), Deputy Attorney General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

## OPINION

GILMAN, Circuit Judge:

Terry Dixon is serving a sentence of life imprisonment without the possibility of parole for attempted murders committed while Dixon was under the influence of drugs and alcohol. After both his direct appeal and his pro se state post-conviction proceedings proved unsuccessful, Dixon timely filed a pro se petition for a writ of habeas corpus in the United States District Court for the District of Nevada. His petition alleged, among other things, the ineffective assistance of trial counsel for failure to raise a voluntary-intoxication defense and for failure to object to a prejudicial photograph of Dixon presented during the state's opening statement at trial.

In July 2014, the district court dismissed the petition on the ground that it contained claims that were never presented to the state courts, and denied Dixon's motion to stay the proceedings on the ground that Dixon had not shown good cause for his failure to exhaust those claims, even though Dixon had pointed out that he lacked counsel in the state post-conviction proceedings. In its order, the court asserted that "[i]f and when [Dixon] exhausts his state court remedies, he may file a new habeas petition in a new action." The one-year statute of limitations to file such a petition, however, had already expired in September 2013.

For the reasons set forth below, we reverse the judgment of the district court and remand with instructions that it enter

a stay while Dixon pursues his unexhausted claims in state court.

I.

Following guilty verdicts on charges of attempted murder, Dixon was sentenced in March 2009 to four consecutive terms of life imprisonment without the possibility of parole.  The charges arose from an incident in October 2007 when Dixon, who was then under the influence of crack cocaine, methamphetamine, marijuana, and a pint of vodka, engaged in a gunfight with the police. The state charged Dixon with, and a jury later convicted him of, the attempted murder of four police officers.  Dixon's convictions and sentence were affirmed by the Nevada Supreme Court in March 2011.  As a consequence, Dixon's conviction became final for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) when the time expired to file a petition for a writ of certiorari with the United States Supreme Court in June 2011.  28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13.

Dixon timely filed a pro se state post-conviction petition in February 2012 alleging the ineffectiveness of his trial counsel.  He argued that his counsel was ineffective for, among other reasons, failing to seek a pretrial writ concerning the sufficiency of the evidence, failing to obtain exculpatory evidence concerning the location where Dixon was standing in his house during the shootout, and failing to conduct an adequate pretrial investigation.  The Nevada Supreme Court denied Dixon's petition in April 2013, entering a final judgment to that effect in May 2013.

Dixon timely filed his habeas petition in the United States District Court for the District of Nevada that same month.  The petition contained a series of claims concerning

the alleged ineffectiveness of Dixon's trial counsel, nearly all of which had been raised, and thereby exhausted, in Dixon's state post-conviction case. But in September 2013, before the state answered, Dixon sought leave to amend his petition to include a series of claims that he conceded had not been previously raised in his state post-conviction proceedings, and consequently were unexhausted. Those claims charged that Dixon's trial counsel failed to raise the defense of voluntary intoxication and object to a PowerPoint presentation that depicted Dixon with the word "GUILTY" superimposed over his image. As to each unexhausted claim, Dixon explained in his petition that he had failed to raise the claim in his state post-conviction proceedings because he had lacked the assistance of counsel.

Dixon then moved to hold his habeas petition in abeyance pending the resolution of the unexhausted claims in state court. The state opposed both the motion to amend and the motion to stay the habeas proceedings. During the pendency of this case in the district court, Dixon also twice sought the appointment of counsel. In both instances his motions were opposed by the state and denied by the district court.

In a July 2014 order, the district court granted Dixon's motion to amend but then dismissed the case "for failure to exhaust claims in the amended petition." The court also denied Dixon's motion to stay the case pending the resolution of his unexhausted claims in state court on the ground that Dixon "has not shown good cause for his failure to exhaust his claims in state court prior to initiating federal habeas proceedings." Finally, the July 2014 order provided that "[i]f and when [Dixon] exhausts his state court remedies, he may file a new habeas petition in a new action." Absent equitable tolling, however, such a petition would be

time-barred because the AEDPA statute of limitations had already expired roughly 10 months before the date of the order. *See* 28 U.S.C. § 2244(d)(1).

This court granted a certificate of appealability and appointed counsel. Dixon's timely appeal followed.

## II.

### A. Standard of review

We review de novo an order dismissing a petition for a writ of habeas corpus based on a failure to exhaust state-court remedies. *Rhoades v. Henry*, 638 F.3d 1027, 1034 (9th Cir. 2010). The denial of a stay and abeyance, on the other hand, is reviewed under the abuse-of-discretion standard. *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014).

### B. Dismissal of the petition

A prisoner in state custody may seek to remedy a violation of his federal constitutional rights by petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254. But before such a petition may be heard, the petitioner must "seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). The exhaustion doctrine reflects "the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and . . . recogni[zes] . . . the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution." *Ex parte Royall*, 117 U.S. 241, 251 (1886). Adhering to this doctrine thus "protect[s] the state courts' role in the enforcement of federal law and

prevent[s] disruption of state judicial proceedings." *Lundy*, 455 U.S. at 518.

In 1982, the Supreme Court held that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." *Id.* at 522. Such a petition is typically called a "mixed petition." *Id.* at 510. The "total exhaustion rule" announced in *Lundy* was deemed appropriate at that time because it carried out the exhaustion doctrine's goal of promoting comity between state and federal courts and "d[id] not unreasonably impair the prisoner's right to relief." *Id.* at 522.

The second consideration—that a rule of total exhaustion would not impair a federal petitioner's ability to obtain federal collateral review—was predicated on the fact that, when *Lundy* was decided, "there was no statute of limitations on the filing of federal habeas corpus petitions." *Rhines v. Weber*, 544 U.S. 269, 274 (2005). This meant that dismissing a mixed petition on exhaustion grounds did not preclude a prisoner from refiling his petition. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000) (observing that a *Lundy* dismissal "contemplated that the prisoner could return to federal court after the requisite exhaustion").

All of this changed when Congress enacted AEDPA in 1996. AEDPA instituted a one-year statute of limitations for federal habeas corpus petitions, 28 U.S.C. § 2244(d)(1), and also codified the *Lundy* total-exhaustion requirement, *id.* § 2254(b)(1). Although the filing of a state post-conviction petition will toll the statute of limitations, *id.* § 2244(d)(2), the filing of a federal petition does not, *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). This means that if a petitioner's mixed petition is dismissed pursuant to *Lundy*, he risks having his federal claims barred by AEDPA's

statute of limitations when he seeks relief in a subsequently filed, fully exhausted petition.

Recognizing that this outcome potentially ran afoul of *Lundy*'s premise that the total-exhaustion rule not "unreasonably impair the prisoner's right to relief," *Lundy*, 455 U.S. at 522, the Supreme Court in 2005 approved two means of ensuring that a federal petitioner would have his federal claims heard even if his petition was mixed. The first method is to stay the case and hold it in abeyance pending exhaustion in state court of the petitioner's unexhausted claims. *Rhines*, 544 U.S. at 275–76. Alternatively, if a stay is deemed inappropriate, the district court must "allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278.

With respect to the second method approved by *Rhines*, we have repeatedly warned the district courts that they "may not dismiss a mixed petition without giving the petitioner the opportunity to delete the unexhausted claims." *Valerio v. Crawford*, 306 F.3d 742, 770 (9th Cir. 2002); *accord Jefferson v. Budge*, 419 F.3d 1013, 1016–17 (9th Cir. 2005); *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001), *overruled on other grounds by Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000). This warning is compelled by the fact that, unless either a stay of the habeas proceedings or leave to delete the unexhausted claims is granted, a federal habeas petitioner will lose the opportunity to have his properly exhausted federal claims heard in federal court simply because they were submitted in a mixed petition. Neither the Supreme Court in *Lundy* nor Congress in enacting AEDPA intended

this outcome. *Rhines*, 544 U.S. at 275–79; *see also Anthony*, 236 F.3d at 574.

The court below had before it an amended habeas petition that expressly documented which claims were exhausted and which were not. According to the state, however, the district court's order dismissing that petition is not clear as to whether the court's reason for dismissal was that it considered the claims entirely unexhausted or only partly exhausted. A comparison of the Nevada Supreme Court's decision denying Dixon's state post-conviction claims with his federal habeas petition reveals that a substantial number of Dixon's claims were in fact exhausted.

Because Dixon's petition was only partially unexhausted, Dixon should have been allowed to delete the unexhausted claims and proceed on the exhausted claims if his motion to stay and abey the case were denied. *See Rhines*, 544 U.S. at 278 (citing *Lundy*, 455 U.S. at 520 (plurality opinion of O'Connor, J.) ("A total exhaustion rule will not impair that interest [the petitioner's interest in obtaining speedy federal relief] since he can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims.")). We do not remand the case to allow Dixon the option of deleting his unexhausted claims, however, because the district court should have granted his request to stay his case.

## C. Denial of the motion to stay

A stay and abeyance is appropriate when the petitioner demonstrates "good cause" for his failure to exhaust his claims in state court, where his claims are not plainly meritless, and where he has not engaged in "abusive litigation tactics." *Rhines*, 544 U.S. at 278. In this case, the state concedes that Dixon has not engaged in abusive

litigation tactics, but it contends that the district court did not abuse its discretion in denying Dixon's motion to stay because Dixon failed to establish good cause for his failure to exhaust and because his unexhausted claims lack any plausible merit.  We hold that Dixon established good cause and that his unexhausted claims were not plainly meritless.

### 1.  Dixon has established good cause because he was not represented by counsel in his state post-conviction proceeding

The caselaw concerning what constitutes "good cause" under *Rhines* has not been developed in great detail.  *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.").  The Supreme Court has addressed the issue only once, when it noted that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citing *Rhines*, 544 U.S. at 278).  Other circuits have found good cause when, for example, the prosecution has wrongfully withheld information.  *Jalowiec v. Bradshaw*, 657 F.3d 293, 304–05 (6th Cir. 2011).  We have held that good cause under *Rhines* does not require a showing of "extraordinary circumstances," *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005), but that a petitioner must do more than simply assert that he was "under the impression" that his claim was exhausted, *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008).

We do know, however, that a petitioner has been found to demonstrate "good cause" where he meets the good-cause standard announced in *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).  *Blake*, 745 F.3d at 983–84.  *Martinez* carved out an exception to the general rule, stated in *Coleman v.*

*Thompson*, 501 U.S. 722, 753–54 (1991), that "ignorance or inadvertence" on the part of a petitioner's post-conviction counsel does not constitute cause to excuse a procedural default of a claim. Specifically, the *Martinez* Court concluded that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, *there was no counsel* or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320 (emphasis added).

In *Blake*, we concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause "was not a bare allegation of state postconviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence." *Blake*, 745 F.3d at 983. The court further observed that "good cause under *Rhines*, when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default." *Id.* at 983–84. We emphasized, in response to the idea that ineffective assistance of post-conviction counsel could always be raised, that *Rhines*'s requirement that claims not be plainly meritless and that the petitioner not engage in dilatory litigation tactics "are designed . . . to ensure that the *Rhines* stay and abeyance is not . . . available in virtually every case," *id.* at 982 (internal quotation marks omitted).

Dixon was without counsel in his state post-conviction proceedings. During the pendency of his federal habeas proceedings, Dixon repeatedly asserted this fact. He then incorporated by reference all previous filings in which he

had asserted his lack of state post-conviction counsel in support of his motion to stay the case under *Rhines*. Based on the plain language of *Blake*—that good cause under *Rhines* "cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default," *id.* at 983–84—the statement that "there was no counsel" in Dixon's state post-conviction case is sufficient to establish good cause. *See Martinez*, 132 S. Ct. at 1320.

Despite *Blake*'s clear language, the state contends that Dixon may not rely upon *Blake* to demonstrate good cause because he did not marshal the same kind of evidence that was in the record in *Blake*. The petitioner in *Blake*, *who was represented by counsel* in his state post-conviction proceedings, proffered evidence in his federal habeas petition that his post-conviction counsel was ineffective for failing to exhaust Blake's claim that his trial counsel was ineffective. *Id.* at 982–83. The state argues that, because Dixon has not put forward substantially similar evidence, he has not demonstrated good cause.

We find the state's argument unpersuasive. Where a petitioner was represented by state post-conviction counsel and must establish, in his federal habeas proceedings, that counsel's ineffectiveness for failure to exhaust, the petitioner must do more than simply make "a bald assertion" of ineffectiveness. *Id.* at 982. If the petitioner was without state post-conviction counsel entirely, however, the only evidence available concerning good cause would, as in this case, be the easily proven assertion that the petitioner was without counsel in those proceedings. A petitioner cannot have had effective assistance of counsel if he had no counsel at all. Requiring Dixon to come forward with additional evidence over and above the fact that he lacked counsel, as the state is arguing, is inconsistent with this court's previous

decision in *Blake* and the Supreme Court's decision in *Martinez*.

A petitioner who is without counsel in state post-conviction proceedings cannot be expected to understand the technical requirements of exhaustion and should not be denied the opportunity to exhaust a potentially meritorious claim simply because he lacked counsel. Such a denial strikes us as unwarranted when even a petitioner who *did* have counsel in his state post-conviction proceedings has a path to a stay under *Rhines* if he alleges a plausible claim that his post-conviction counsel was ineffective. *Id.* at 983–84.

We recognize, of course, that many state post-conviction proceedings are conducted pro se. For this group of federal habeas petitioners, the first element of the *Rhines* test can easily be established to the extent that they were without counsel. But the other two elements of the test—claim plausibility and the absence of abusive tactics—will weed out plainly meritless claims and will help ensure that a dilatory litigant's failure to exhaust his claims in state court will not be condoned. *See Rhines*, 544 U.S. at 278.

Furthermore, habeas petitioners who can avoid a procedural default under *Martinez* are at least permitted to have the merits of their exhausted claims reached. In contrast, a petitioner who is excused only for a failure to exhaust under *Rhines* might not have the merits of his claim adjudicated even after he is given leave to exhaust the claim in state court due to the operation of another procedural bar that the state might raise. *See, e.g.*, Hertz & Liebman, 2 Federal Habeas Corpus Practice & Procedure § 23.1 (6th ed. 2011) (noting that, in contrast to the exhaustion doctrine, which "never wholly forecloses, but only postpones, federal relief," "[i]f a [procedural] default occurs, if the state asserts

it as a defense to habeas corpus relief, and if none of the exceptions to the procedural default rule apply, then federal court relief is *foreclosed*" (emphasis in original)).  To have a procedural default excused is therefore of greater consequence for a habeas petitioner than to have a failure to exhaust excused.  The standard for excusing a failure to exhaust should therefore not be any more demanding than the standard for excusing a procedural default.  With these observations in mind, we now turn to the second factor of the *Rhines* test.

### 2. At least one of Dixon's claims is not "plainly meritless"

A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*.  544 U.S. at 277.  In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515 (1982)).

At least one of Dixon's unexhausted claims appears on its face to not be "plainly meritless."  During the prosecution's opening statement at Dixon's trial, the state projected before the jury Dixon's booking photograph with the word "GUILTY" written across it.  Dixon's counsel did not object.  In a later case, the Nevada Supreme Court recognized that this exact practice "undermined the presumption of innocence, . . . which is a basic component of 'the fair trial' guaranteed by the Fourteenth Amendment."

*Watters v. State*, 313 P.3d 243, 248 (Nev. 2013) (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)) (reversing the defendant's conviction on that ground) (alterations omitted). An attorney's failure to raise a state-law objection at trial—or the likely success of a direct appeal on the same basis—may support a claim for ineffective assistance of counsel in a later federal habeas petition. *See Carrera v. Ayers*, 699 F.3d 1104, 1107–09 (9th Cir. 2012) (en banc).

*Watters* does not conclusively establish that Dixon's ineffective-assistance-of-counsel claim has merit because, on remand, Dixon must go beyond showing that his claim is not "plainly meritless"; he must prove that he was prejudiced by his trial counsel's deficient performance in order to prevail on a claim for the ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 700 (1984). But *Watters* does preclude a ruling that Dixon's claim is "plainly meritless" for the purposes of *Rhines*.

In sum, Dixon has established "good cause" for his failure to exhaust, and we have concluded that at least one of his unexhausted claims is not "plainly meritless." The state, moreover, concedes that he has not engaged in "intentionally dilatory litigation tactics." *See Rhines*, 544 U.S. at 278; R. 67. *Rhines* therefore compels the conclusion that the district court should have granted Dixon's motion to stay his federal habeas case while he exhausts his potentially meritorious claims. *See id.* at 277–78.

III.

For all of the reasons set forth above, we reverse the judgment of the district court and remand the case with instructions to grant Dixon's motion for a stay and abeyance

with reasonable time limits while he pursues his unexhausted claims in state court.

**REVERSED and REMANDED.**