IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Plaintiff/Petitioner,*

*v.*

WILLIAM CRAIG MILLER,
*Defendant/Respondent.*

No. CR-19-0061-PC
**Filed May 04, 2021**

Appeal from the Maricopa County Superior Court
The Honorable Janet E. Barton, Judge, *Retired*
No. CR2006-112056-001
**REVERSED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Lacey Stover Gard, Chief
Counsel, Jeffrey L. Sparks (argued), Assistant Attorney General, Phoenix,
Attorneys for State of Arizona

Tamara Brooks-Primera (argued), Kerri L. Chamberlin, Office of the Legal
Advocate, Phoenix, Attorneys for William Craig Miller

VICE CHIEF JUSTICE TIMMER AUTHORED THE OPINION OF THE COURT, IN WHICH CHIEF JUSTICE BRUTINEL, JUSTICES BOLICK, AND PELANDER (RETIRED)* JOINED.

VICE CHIEF JUSTICE TIMMER, opinion of the Court:

¶1          A defendant is deprived of the Sixth Amendment right to counsel if his lawyer provided deficient representation, which prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We are asked to decide whether the failure to challenge an incorrect jury instruction widely used by the legal community at the time of trial and appeal constitutes deficient performance.  Although lawyers can be constitutionally deficient for making errors commonly made by others, the record here does not reflect that the defendant's lawyers were deficient by failing to challenge the jury instruction or that any deficiency prejudiced the defense.

## BACKGROUND

¶2          In 2011, a jury convicted William Craig Miller of five counts of first-degree murder and other charges.  The jury also found four aggravating circumstances: prior conviction of a serious offense, A.R.S. § 13-751(F)(2) (2009); multiple homicides, § 13-751(F)(8); young age of one victim, § 13-751(F)(9); and witness elimination, § 13-751(F)(12).

¶3          Before trial, Miller disclosed several statutory and non-statutory mitigating circumstances he intended to prove at any penalty phase, including that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to

---

*          Justices Lopez, Beene, and Montgomery have recused themselves from this matter.   Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.), has been designated to sit in this matter.   Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

prosecution." *See* A.R.S. § 13-751(G)(1); [1] *see also* Ariz. R. Crim. P. 15.2(h)(1)(A)(i) (requiring the disclosure). Consequently, without request, objection, or comment by either party, during the penalty phase the court provided the jury with the Revised Arizona Jury Instruction ("RAJI") in effect at the time concerning this statutory mitigator:

> It is a mitigating circumstance that the defendant's capacity to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law, was significantly impaired, but not so impaired as to constitute a defense to prosecution. The defendant has the burden of proving this mitigating circumstance by a preponderance of the evidence.
>
> "Significantly impaired" means that the defendant suffered from mental illness, personality disorder, character disorder, substance abuse, and/or alcohol abuse at or near the time of the offense, that **prevented the defendant from appreciating** the wrongfulness of the conduct or conforming his conduct to the requirements of the law.
>
> If any juror finds by a preponderance of the evidence that the defendant was significantly impaired, then that juror shall consider this impairment as a mitigating circumstance when determining whether to sentence the defendant to life imprisonment or death.
>
> The effect you give to any mitigation is left to your sound discretion in determining whether there are mitigating circumstances sufficiently substantial to call for leniency.

(Emphasis added.)

¶4        Over a five-day span, Miller presented "a good deal of mitigation, including evidence that he suffered from Bipolar Disorder I; exhibited troubling behaviors as a child; had a family history of emotional difficulties, drug abuse, and alcohol problems; and had experienced difficulty controlling his impulses throughout his life." *State v. Miller*, 234 Ariz. 31, 46 ¶ 63 (2013). The jury found this evidence insufficient to warrant leniency and returned death sentence verdicts on each murder

---

[1] Unless otherwise noted, we cite the current versions of statutes and rules.

count. This Court affirmed Miller's convictions and sentences. *Id.* at 46–47 ¶ 64.

**¶5** In 2016, Miller petitioned the trial court for post-conviction relief ("PCR") on multiple grounds. Relevant here, he claimed that trial counsel were constitutionally ineffective for failing to object to the RAJI's definition of "significantly impaired," and appellate counsel was ineffective for failing to challenge the instruction on appeal.

**¶6** Based solely on the petition and related filings, the PCR court agreed with Miller that the RAJI had misstated the law by using the word "prevented," and trial and appellate counsel were constitutionally ineffective for failing to challenge the RAJI. It noted that the RAJI was revised in 2016, five years after Miller's trial, to replace "prevented the defendant from appreciating" with "substantially reduced the defendant's ability to appreciate." *See* Rev. Ariz. Jury Instr. (Crim.) Capital Case 3.2, at 626 (5th ed. 2019). The court could "find no reason" for the change to the RAJI other than "recognition that the previous instruction's language imposed the incorrect standard." Because the court also found that counsel's ineffectiveness prejudiced Miller, it granted relief by ordering a new penalty phase trial. The court subsequently denied the State's motion for rehearing, including its request for an evidentiary hearing to explore whether counsel's failure to challenge the RAJI fell below prevailing professional norms.

**¶7** We granted the State's petition for review because it raises issues of statewide importance that are likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. §§ 12-102(A) and 13-4031.

## DISCUSSION

**¶8** Whether Miller's lawyers provided ineffective assistance is a mixed question of fact and law. *See State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017). We review the PCR court's legal conclusions and constitutional issues de novo. *Id.* Ultimately, we review a court's ruling on a PCR petition for an abuse of discretion, which occurs if the court makes an error of law. *Id.*

**¶9** The Sixth Amendment guarantees "the right to effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970)). A defendant claiming deprivation of this right must make a two-pronged showing. *Id.* at 687. First, he must show that counsel's representation was deficient. *Id.* Second, he must demonstrate that this deficient performance prejudiced his defense. *Id.* To prevail, the defendant must satisfy both prongs. *Id.* at 697.

## I. Deficiency

¶10 A defendant's lawyers are not deficient merely for making errors. Rather, the errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To determine deficiency, we ask "whether counsel's representation 'fell below an objective standard of reasonableness,'" which is formed by the "practice and expectations of the legal community," *Hinton v. Alabama*, 571 U.S. 263, 272–73 (2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)), at the time the lawyer provides representation, *see Bobby v. Van Hook*, 558 U.S. 4, 8 (2009). Representation falls below the "prevailing professional norms" of the legal community if counsel's performance was unreasonable under the circumstances. *Hinton*, 571 U.S. at 273 (quoting *Padilla*, 559 U.S. at 366); *see also Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Deficiency must be established by a "demonstrable reality" rather than as a product of speculation. *State v. Meeker*, 143 Ariz. 256, 264 (1984). A "strong presumption" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶11 The State does not contest that the RAJI given during the penalty phase incorrectly imposed a higher burden than required to prove the (G)(1) mitigator. *See State v. Johnson*, 247 Ariz. 166, 185 ¶ 43 (2019) ("The State concedes that limiting the definition of 'significantly impaired' to the defendant being *prevented* from appreciating the wrongfulness of the conduct was error . . . ."). Instead, it argues the PCR court erred by finding trial and appellate counsel ineffective for failing to challenge the RAJI because Miller failed to prove that counsel's lapse fell below an objective standard of reasonableness. Miller counters he proved counsel's deficiency by demonstrating they were necessarily ignorant of the (G)(1) mitigator's requirement as no strategic reason existed for failing to challenge the RAJI. He asserts that ignorance of the law governing the impact of his mental health mitigation evidence necessarily fell below the professional norms of the legal community.

¶12 The record does not support a conclusion that Miller proved that his trial and appellate counsel acted unreasonably under the circumstances by failing to challenge the RAJI's inclusion of the "prevented" language. *See Hinton*, 571 U.S. at 273. In his PCR petition and reply to the State's response, Miller pointed only to the RAJI's error as proof of counsel's deficiency. He did not provide any evidence, such as affidavits from other defense counsel, suggesting his lawyers' failure to challenge the RAJI fell below professional norms established by the legal community. *See* Ariz. R. Crim. P. 32.7(e) ("The defendant must attach to the petition any affidavits, records, or other evidence currently available to the defendant supporting the allegations in the petition.").

¶13 In contrast, evidence exists that Miller's lawyers acted within prevailing professional norms. *See Hinton*, 571 U.S. at 273. The RAJI, although not sanctioned by this Court, was created by the State Bar of Arizona Criminal Jury Instruction Committee, which is comprised of judicial officers, defense lawyers, and prosecutors. *See* Rev. Ariz. Jury Instr. (Crim.) Preface & Important Note. Although not binding, these recommended jury instructions evidence the legal profession's view that they accurately explain the law to jurors. *Cf. Padilla*, 559 U.S. at 366 ("We long have recognized that '[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . .'" (quoting *Strickland*, 466 U.S. at 688)). Also, the trial judge, not the parties, introduced the RAJI, thus lending it additional credibility. *See State v. Trostle*, 191 Ariz. 4, 22 (1997) (stating that trial judges presumably know the law and apply it in making decisions). And the State identified one other capital case that had used the RAJI without objection in a 2011 trial. *See* PCR Petition at 102–03, *State v. Naranjo*, No. CR 2007-119504-001 (Maricopa Cnty. Super. Ct. Aug. 6, 2018) (No. 9587463); *see also Johnson*, 247 Ariz. at 185 ¶ 41 (noting defense counsel's failure to object to the RAJI during trial). The RAJI was not called into question until well after Miller's trial and appeal, when the state bar committee deleted the "prevented" language in 2016, and this Court reported in 2019 that the State conceded that the pre-2016 RAJI was error. *See Johnson*, 247 Ariz. at 185 ¶ 43.

¶14 We are not averse to Miller's argument that a lawyer's representation can be unreasonable under prevailing professional norms even when the legal community has uniformly made the same error. *Cf. Padilla*, 559 U.S. at 367 (emphasizing that although legal community

standards "may be valuable measures of the prevailing professional norms of effective representation," they are not "inexorable commands" (*quoting Bobby*, 558 U.S. at 8)).   But the record does not depict such circumstances here.

**¶15**          Use of "prevented" in the pre-2016 RAJI is not an obvious, grievous error.   *See Strickland*, 466 U.S. at 687 (stating that the first prong requires a showing of "serious" error).   The word "prevented," particularly when coupled with "from," as in the RAJI, can mean "hindered" as well as "stopped."   *See Prevent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/prevent (last visited Apr. 28, 2021).   If "prevented" meant "stopped," the RAJI would have been clearly wrong by changing the (G)(1) mitigator into one akin to a guilty-except-insane defense to commission of the offenses.   *See* A.R.S. § 13-502(A) ("A person may be guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong.").   But if "prevented" meant "hindered," the RAJI would have been correct, essentially aligning with the 2016 RAJI revision. Because the RAJI also stated that being "significantly impaired" falls short of constituting a defense to prosecution, and "hindered" fits better with the plain meaning of "impaired," interpreting "prevented" synonymously with "hindered" was not unreasonable.   *See Impaired*, Merriam-Webster, https://www.merriam-webster.com/dictionary/impaired (last visited Apr. 28, 2021) (defining "impaired" as "being in an imperfect or weakened state or condition: such as . . . diminished in function or ability" or "unable to function normally or safely").

**¶16**          Ultimately, the state bar committee wisely amended the RAJI to remove any uncertainty about what must be shown to prove the (G)(1) mitigator.   But Miller did not present any affidavits or other evidence suggesting that the criminal defense attorney community had questioned the RAJI at the time of Miller's trial and appeal.   *Cf. Wade v. Brockamp*, 342 P.3d 142, 152 (Or. App. 2015) (finding defense counsel's failure to object to a standard jury instruction deficient where the record reflected that the defense community had questioned the continued viability of the instruction in light of a published decision).   On this record, trial and appellate counsel's failure to challenge the RAJI given at Miller's trial was understandable and thus reasonable under prevailing professional norms. We therefore disagree with the PCR court that Miller proved that his lawyers were constitutionally deficient simply because the RAJI was

erroneous. Although we could end our inquiry here, in light of the practical consequences of our decision, we address *Strickland*'s prejudice prong.

## II. Prejudice

**¶17** To prove prejudice, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. It is not enough to show that "the errors had some conceivable effect on the outcome of the proceeding," as virtually every deficient act or omission would meet that test. *Id.* at 693. Instead, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**¶18** The PCR court found prejudice because "a reasonable probability exists that the result of the penalty phase would have been different had the jury received the correct instruction." In ruling on the motion for rehearing, the court elaborated somewhat by explaining that although jurors were not precluded from considering Miller's mental health mitigation evidence, the RAJI "precluded [them] from *properly* considering such evidence as well as [the (G)(1)] mitigator." (Emphasis added.)

**¶19** We agree with the State that the PCR court's rulings were incomplete and flawed. First, the court failed to "consider the totality of the evidence" as required to decide whether there was a reasonable probability that but for counsel's unprofessional errors Miller would have gotten a life sentence (trial lawyer deficiency) or a decision from this Court vacating the death sentence and ordering a new penalty phase (appellate lawyer deficiency). *See Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (quoting *Strickland*, 466 U.S. at 695). The pertinent inquiry was whether, absent the error, the jury (or this Court) "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *See Strickland*, 466 U.S. at 695; *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (instructing that in assessing prejudice, a court should "reweigh the evidence in aggravation against the totality of available mitigating evidence"). The PCR court erred by failing to weigh the aggravating circumstances against the mitigation evidence, after taking the error into account, to assess prejudice. *See Pandeli*, 242 Ariz. at 180 ¶ 4

("An abuse of discretion occurs if the PCR court . . . fails to adequately investigate the facts necessary to support its decision.").

¶20    Second, the record does not reflect that but for counsel's errors, a reasonable probability exists that the penalty phase verdict or the subsequent appeal would have yielded different results.   In light of the RAJI's "prevented" language, which the prosecutor inaccurately described in closing argument as meaning "I can't help myself," the worst case scenario was that all jurors quickly dismissed the (G)(1) mitigator's applicability because the mitigation evidence showed, at most, that Miller's mental health problems reduced, but did not eliminate, his ability to appreciate the wrongfulness of his conduct or conform that conduct to the law.   But even without the RAJI, other instructions permitted jurors to conclude that Miller's reduced abilities served as mitigating circumstances.

¶21    The trial court instructed the jury that besides the (G)(1) mitigator, Miller offered seven other mitigators, including personality disorders, psychiatric disorders, neuro-developmental problems, and developmental handicaps.   It also instructed that jurors were "not limited to [considering] these proposed mitigating circumstances" and could "consider anything related to [Miller's] character, propensity, history or record . . . that might justify a penalty less severe than death."   Thus, even if the RAJI precluded jurors from finding the (G)(1) mitigator, they were free to find the other mental health mitigators, which were based on the same evidence introduced to prove the (G)(1) mitigator, and conclude that although they did not render Miller unable to appreciate the wrongfulness of his actions or conform his conduct to the law's requirements, they reduced his capacity for doing so.   Indeed, this was the thrust of the mitigation evidence and Miller's argument to the jury (e.g., "What had diminished his control to engage in this behavior?"   "None of these [mental health problems] are William's to choose from, and they all color and inform his decisions.   It doesn't act as an excuse, but it explains, in part, why it happened.").

¶22    Yet, after considering the mental health evidence and giving it whatever weight they deemed it deserved, the jurors found it insufficient to warrant leniency when compared to the nature of the murders, which included the murder of two children, and the four aggravators. Consequently, even if Miller's trial lawyers were deficient by not objecting to the RAJI, a reasonable probability does not exist that but for this error, the jury would have returned a life sentence verdict.   And in light of this

lack of prejudice, it is even less likely that had his appellate counsel challenged the RAJI, this Court would have found fundamental error and remanded for a new penalty phase. *See Johnson*, 247 Ariz. at 186 ¶ 44 (finding no prejudice from use of the same RAJI on fundamental error review in part because the court's other instructions permitted the jury to freely consider the defendant's "large mitigation case," and yet the jury found it "lacking when compared to the three aggravating factors and the nature of the murder").

¶23 In sum, even if Miller's lawyers were deficient for failing to challenge the RAJI, his defense was not prejudiced because a reasonable probability did not exist that but for the errors, the jury would have returned a life sentence verdict, and this Court would have remanded for a new penalty phase trial. *See Strickland*, 466 U.S. at 694.

## CONCLUSION

¶24 For the foregoing reasons, we reverse the PCR court's judgment granting a new penalty phase trial.