IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA**
*Respondent,*

*v.*

**LARRY DEAN ANDERSON**
*Petitioner.*

---

No. CR-23-0008-PR
Filed May 2, 2024

---

Appeal from the Superior Court in Pima County
The Honorable James E. Marner, Judge
No. CR062244001
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division Two
No. 2 CA-CR 2022-0121-PR
Filed December 8, 2022
**VACATED**

---

COUNSEL:

Laura Conover, Pima County Attorney, Brad Roach (argued), Deputy County Attorney, Tucson, Attorneys for Pima County

Robert J. McWhirter (argued), Law Offices of Robert J. McWhirter, Tempe, and Randal McDonald, Law Office of Randal B. McDonald, Phoenix, Attorneys for Larry Dean Anderson

Rachel Mitchell, Maricopa County Attorney, Philip Daniel Garrow, Philip Casey Grove, Johnny Jacquez, Deputy County Attorneys, Phoenix, Attorneys for Amicus Curiae Maricopa County Attorney's Office

Karen S. Smith, Arizona Justice Project, Phoenix, Attorneys for Amicus Curiae Arizona Justice Project

Jon M. Sands, Federal Public Defender, Keith J. Hilzendeger, Assistant Federal Public Defender, Attorneys for Amicus Curiae Federal Public Defender for the District of Arizona

———————

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, and KING joined. JUSTICE BEENE, joined by JUSTICE MONTGOMERY, dissented.

———————

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

**¶1**　　　　Larry Dean Anderson was convicted of conspiracy to commit first-degree murder and sentenced to life in prison without the possibility of release for twenty-five years. Anderson's most recent post-conviction relief ("PCR") petition claims that his attorney erroneously advised him that he was parole eligible, which caused him to reject an allegedly offered plea agreement. We consider whether this claim for PCR based on ineffective assistance of counsel ("IAC") is either precluded or untimely.

**¶2**　　　　Because of the pervasive confusion by both bench and bar about parole availability after it was abolished in Arizona, we hold Anderson's PCR claim is neither untimely nor precluded and he is entitled to an evidentiary hearing to determine whether he had been offered a plea agreement before his trial.

## I.　　BACKGROUND

**¶3**　　　　In 1993, the Arizona Legislature revised the criminal code to provide that an adult who commits a felony offense is generally ineligible for parole. 1993 Ariz. Sess. Laws ch. 255, § 88 (1st Reg. Sess.); A.R.S. § 41-1604.09(I).

**¶4**　　　　In 2000, a jury found Anderson guilty of conspiracy to commit first-degree murder. At the sentencing hearing, the trial court ordered he "be imprisoned for the term of life without possibility of release until the service of at least 25 years." The accompanying written order noted a sentence of "life without the possibility of release on any basis until the service of twenty-five years."

¶5            In 2000 and 2003, Anderson filed petitions for PCR based on unrelated claims of IAC.  The trial court dismissed both petitions, and the court of appeals denied relief on review.

¶6            In early 2022, Anderson brought this third IAC claim.  He alleged that while he was considering whether to accept a plea agreement stipulating to a term of eighteen to twenty-two years in prison, his trial counsel advised him that if he did not accept the plea agreement and was found guilty at trial, parole would be available after he served twenty-five years.  Anderson claimed that he only recently learned he was not parole eligible when he attempted to enroll in an educational program through the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR").

¶7            Anderson offered limited evidence to the trial court to support his latest petition.  He attached an affidavit from his trial counsel, Brick Storts, who declared that he could not remember a specific plea offer but did not dispute a plea could have been offered for a sentence of eighteen to twenty-two years.  Storts also confirmed he advised Anderson that if he lost at trial, he would receive a life sentence but would be eligible for parole after serving twenty-five years.  Storts, however, became Anderson's attorney only after the case was set for trial and previous attorneys withdrew or were removed from the case.  One of those attorneys had no memory of the case, and the other was deceased.  The Pima County Attorney's Office did not have a record of any plea offer.

¶8            After initially joining Anderson's request for an evidentiary hearing, the State filed a notice of withdrawal and a response to Anderson's petition, arguing it was precluded, untimely, and not colorable because a plea offer never existed.  It cited both the lack of reference to a plea agreement in the record along with several notations in the pre-trial record that the parties had been preparing for trial.  The State also argued that a plea agreement with an eighteen- to twenty-two-year sentence under the terms Anderson alleged would have been incongruent with sentencing statutes at the time.

¶9            In reply, Anderson cited several documents he alleged he recovered recently from his original case file to support his assertions that he had been misadvised as to his parole eligibility and that the State had offered a plea.  He attached personal letters to his attorneys and the mother

of his child, allegedly from the late 1990s and early 2010s, which referenced a plea offer for a sentence between eighteen and twenty-two years and his expectation that he would be eligible for parole after serving the twenty-five-year sentence. Anderson also attached 2021 correspondence with a correctional officer showing it took multiple inquiries for ADCRR to advise him he was not in fact eligible for parole.

**¶10** The trial court denied Anderson's renewed request for an evidentiary hearing and denied relief. It determined Anderson's IAC claim was not precluded or untimely, reasoning the ambiguity surrounding parole availability excused his delay. But the trial court also determined Anderson's IAC claim was not colorable. In its view, Anderson's counsel did not fall below professional norms because criminal defense attorneys during that time were consistently advising clients that parole was available. It also found Anderson could not show prejudice because of the unlikelihood the State would have offered a plea in view of the charges and the lack of evidence of any offer in the court record.

**¶11** The court of appeals denied relief. It determined Anderson's IAC claim was untimely and his delay unexcused. *State v. Anderson*, No. 2 CA-CR 2022-0121-PR, 2022 WL 17494588, at *1 ¶ 6 (Ariz. App. Dec. 8, 2022) (mem. decision). It further held his claim was precluded because he failed to raise it in his previous petitions for PCR. *Id.*

**¶12** We granted review to consider whether Anderson's IAC claim is untimely and precluded and whether he presents a colorable claim. We address these issues in view of the then-pervasive confusion about parole availability in Arizona. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.   DISCUSSION

**¶13** We review the interpretation of statutes and court rules as well as constitutional issues de novo. *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017); *State v. Gutierrez*, 229 Ariz. 573, 576 ¶ 19 (2012). We review a court's ruling on a petition for PCR, including a denial based on lack of a colorable claim, for an abuse of discretion. *Pandeli*, 242 Ariz. at 180 ¶ 4; *State v. Amaral*, 239 Ariz. 217, 219 ¶ 9 (2016); *see also State v. Schrock*, 149 Ariz. 433, 441 (1986).

¶14 Criminal defendants may file a timely notice requesting PCR from their convictions and sentences. Ariz. R. Crim. P. 32.1. Grounds for relief include that a conviction was obtained or a sentence imposed in violation of the U.S. or Arizona Constitutions. *Id.* at 32.1(a). Defendants have a constitutional right "to effective assistance of counsel." *State v. Miller*, 251 Ariz. 99, 102 ¶ 9 (2021) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The dispositive issue here is whether Anderson's attorney's erroneous advice excuses both Anderson's delay and his failure to raise that erroneous advice as an issue in prior PCR filings.

**A. Timeliness**

¶15 Generally, a defendant must file notice of a PCR claim under Rule 32.1(a) within ninety days after the oral pronouncement of his sentence. Ariz. R. Crim. P. 32.4(b)(3)(A). Rule 32.4(b)(3)(D) excuses untimely notice "if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." *See also State v. Diaz*, 236 Ariz. 361, 363 ¶ 13 (2014) (determining defendant did not waive an IAC claim because failure to timely file his PCR petition was not his fault).

¶16 Anderson adequately explained the failure to file here. Before trial, his attorney did not inform him the legislature had eliminated parole and instead incorrectly advised him that, if found guilty, he would be eligible for parole after twenty-five years. Anderson was not at fault for the pervasive confusion about parole eligibility at the time of his sentencing.

¶17 His delay was not, as the court of appeals reasoned, the result of a "mere failure to recognize a valid claim might exist." *Anderson*, 2022 WL 17494588, at *1 ¶ 6. Appellate courts, including this Court, published decisions as late as 2013 indicating parole was still available for those convicted of felonies with the possibility of release after twenty-five years. *See, e.g.*, *State v. Benson*, 232 Ariz. 452, 465 ¶ 56 (2013) ("Arizona law does not make [the defendant] ineligible for parole."); *State v. Cruz*, 218 Ariz. 149, 160 ¶ 42 (2008) ("No state law would have prohibited [the defendant's] release on parole after serving twenty-five years, had he been given a life sentence."). As amicus Arizona Justice Project noted, trial courts since 1994 have interchangeably used the words "parole" and "release" when imposing non-natural-life sentences. And ADCRR policies as recently as 2021 were unclear about whether inmates like Anderson who were sentenced to other than natural life sentences were eligible for parole.

5

**¶18** This Court determined in *Chaparro v. Shinn*, 248 Ariz. 138, 142 ¶ 17 (2020), that "the meaning of 'parole' is not ambiguous or synonymous with other forms of release." Therefore, because Anderson's sentence provided for the possibility of release after twenty-five years, Arizona law made him eligible for executive clemency or other forms of release after twenty-five years but not eligible for parole.

**¶19** The State and amicus Maricopa County Attorney's Office ("MCAO") misplace their reliance on A.R.S. § 13-718 in addressing the timeliness issue. Enacted in 2018, § 13-718 provided that, notwithstanding the legislature's previous elimination of parole, a defendant was parole-eligible if his post-1993 plea agreement stipulated to parole eligibility. The State and MCAO argue § 13-718's enactment should have alerted Anderson that parole was unavailable to him and, at the latest, he should have pursued this claim in 2018. But § 13-718 provides relief to defendants who were erroneously sentenced pursuant to a plea agreement amid the pervasive confusion about parole eligibility. It does not apply to Anderson's sentence following his conviction at trial. Even if we presume that Anderson was aware of § 13-718, it would not reasonably have placed him on notice of *his* ineligibility for parole.

**B. Preclusion**

**¶20** A defendant is precluded from PCR under Rule 32.1(a) based on any ground "waived at trial or on appeal, or in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3).

**¶21** Our preclusion rules require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case. *Diaz*, 236 Ariz. at 363 ¶ 12. "The ground of ineffective assistance of counsel cannot be raised repeatedly." *Stewart v. Smith*, 202 Ariz. 446, 450 ¶ 12 (2002). Generally, "where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded." *State v. Spreitz*, 202 Ariz. 1, 2 ¶ 4 (2002) (emphasis omitted). This Court has rejected an approach to Rule 32 proceedings that would create "a never-ending tunnel" in which "defendants could endlessly litigate effectiveness of counsel by claiming

that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation." *State v. Mata*, 185 Ariz. 319, 334 (1996).

¶22        But Rule 32 is also "designed to accommodate the unusual situation where justice ran its course and yet went awry." *State v. Carriger*, 143 Ariz. 142, 146 (1984) (citation omitted) (internal quotation marks omitted). As this Court explained in *Diaz*, "PCR counsel can waive most claims of trial error on the defendant's behalf by failing to assert them in a PCR petition. If the claim is of 'sufficient constitutional magnitude,' however, the state must prove that the defendant knowingly, voluntarily, and intelligently waived the claim." 236 Ariz. at 362 ¶ 8 (internal citation omitted) (quoting *Stewart*, 202 Ariz. at 449–50 ¶¶ 9–10).

¶23        A waiver that would warrant preclusion under Rule 32 then turns on "the particular right implicated by the allegedly ineffective representation." *Id.* ¶ 9. Although a defendant has the right to effective assistance of counsel in deciding whether to take his chances at trial or to accept a plea offer, *State v. Nunez-Diaz*, 247 Ariz. 1, 6 ¶ 21 (2019), "defendants do not have a constitutional right to a plea bargain," *Diaz*, 236 Ariz. at 362 ¶ 9. *See also Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

¶24        In *Diaz*, this Court determined "unusual circumstances" compelled the conclusion that a petitioner had not waived his IAC claim, despite previous PCR petitions raising IAC claims. 236 Ariz. at 363 ¶ 10. Diaz had filed two notices of PCR, but in each instance, the attorney failed to file the petition, leading the trial court to dismiss the matter with prejudice. *Id.* at 362 ¶¶ 3–4. When, at last, Diaz's third attorney timely filed the petition, the trial court denied it, reasoning the claim was precluded because it had been waived and adjudicated on the merits in a prior PCR proceeding. *Id.* ¶ 5. This Court held Diaz's IAC claim was not waived under Rule 32.2(a)(3) because "Diaz timely filed a notice of PCR seeking to assert an IAC claim, and he was blameless regarding his former attorneys' failures to file an initial PCR petition." *Id.* at 363 ¶ 11. Noting that preclusion requires defendants to "raise all *known* claims for relief in a single petition" (emphasis added) (citation omitted), this Court reasoned that "[p]ermitting Diaz to file his first petition to assert an IAC claim under the circumstances here [would] not result in repeated review of the IAC claim; it would result in its first review." *Id.* ¶ 12; *see also State v. Petty*, 225 Ariz. 369, 373 ¶ 11 (App. 2010) ("The 'purpose of the preclusion rule' is to

7

'require[] a defendant to raise all known claims for relief in a single petition to the trial court, thereby avoiding piecemeal litigation and fostering judicial efficiency.'" (alteration in original) (quoting *State v. Rosales*, 205 Ariz. 86, 90 ¶ 12 (App. 2003))).

**¶25** This case also presents unusual, albeit different, circumstances. Anderson filed previous petitions for PCR in 2000 and 2003. At that time, defendants, attorneys, and courts did not know of or recognize the error due to the confusion regarding the abolition of parole. Counsel's error here was less an issue of individual IAC as it was a systemic failure to recognize the effect of the change in the law regarding parole. As a result of those unusual circumstances, Anderson's 2022 notice of IAC claim was the first time he could have reasonably raised the issue of erroneous advice about the availability of parole. Indeed, as amicus MCAO concedes, "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice IAC claim where the late discovery of the claim's basis would have been excused." For the same reasons Anderson's claim is not untimely, it was not cognizable as a "known" claim.

**¶26** We do not, however, hold Rule 32.1(a)'s exception to the preclusion rule applies broadly to IAC claims based on erroneous advice surrounding plea agreements. Instead, Anderson's claim represents an extremely rare set of circumstances in the context of the pervasive confusion about parole and the extraordinary remedies this Court and the legislature fashioned to deal with it. *See, e.g.*, *Chaparro*, 248 Ariz. at 142 ¶ 17 (holding a defendant was eligible for parole despite its abolition because his final and enforceable sentence provided for it); A.R.S. § 13-718. Moreover, we determine Anderson's claim is not precluded in view of our duty to "construe [rules of criminal procedure] to secure . . . fairness in administration . . . and to protect the fundamental rights of the individual while preserving the public welfare." Ariz. R. Crim. P. 1.2.

## C. Colorability

**¶27** "Effective assistance of counsel is just as necessary at the plea bargaining stage as at trial." *State v. Anderson*, 147 Ariz. 346, 350 (1985). "To prove ineffective assistance of trial counsel, a petitioner must show both deficient performance and prejudice." *State v. Donald*, 198 Ariz. 406, 413 ¶ 15 (App. 2000) (citing *Strickland,* 466 U.S. at 687). This Court has adopted the two-pronged test in *Strickland*, 466 U.S. at 687, which determines

ineffective assistance based on (1) counsel's deficient performance under all the circumstances and (2) the reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Nash*, 143 Ariz. 392, 397 (1985); *see also Anderson*, 147 Ariz. at 351 (deciding whether counsel was ineffective and whether such ineffectiveness warranted withdrawal of a plea); *State v. Salazar*, 146 Ariz. 540, 541–42 (1985) (deciding whether trial counsel was ineffective and whether such ineffectiveness warranted a new trial).

¶28         The "two-part [IAC] standard [is] applicable to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).   Erroneous legal advice during plea negotiations can constitute deficient performance. *See Donald*, 198 Ariz. at 412 ¶ 11 ("We agree with these courts in concluding that counsel's failure to provide competent advice to a criminal defendant concerning a plea offer constitutes deficient performance."); *id.* at 413 ¶ 16 ("To establish deficient performance during plea negotiations, a petitioner must prove that the lawyer either (1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea."); *see also Lafler*, 566 U.S. at 162–63 (observing that "all parties agree[d] the performance of respondent's counsel was deficient" where he incorrectly advised the defendant on a legal rule during plea negotiations).

¶29         On the first *Strickland* prong, deficient performance is determined based on whether counsel's representation falls "below an objective standard of reasonableness" based on the "practice and expectations of the legal community." *Miller*, 251 Ariz. at 102 ¶ 10 (internal quotation mark omitted) (quoting *Hinton v. Alabama*, 571 U.S. 263, 272–73 (2014)).  The point is not whether counsel erred but whether counsel's errors were so deficient as to provide ineffective assistance. *See id.*

¶30         In *Miller*, this Court concluded "a lawyer's representation can be unreasonable under prevailing professional norms even when the legal community has uniformly made the same error." *Id.* at 103 ¶ 14.  Legal community standards "may be valuable measures of the prevailing professional norms of effective representation," but they are not "inexorable commands." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010)).

¶31        Here, Anderson's attorney's performance was deficient under *Strickland* because his error constituted incorrect advice on a significant issue relating to Anderson's potential sentence if convicted—even if other attorneys were giving similarly incorrect advice at the time. Under the circumstances of this case, Anderson's attorney's advice based on his failure to realize parole had been abolished for the charged offense was a serious error affecting Anderson's ability to intelligently consider the alleged plea offer.

¶32        Focused on prevailing professional norms, our dissenting colleagues ignore what deficient advice meant under the circumstances of this case—a failure to advise on a legal rule, which created serious error. They assert a reluctance to "deviate beyond the framework set forth in *Strickland* and its progeny," *infra* ¶ 46, without addressing the key to that framework: determining whether ineffective assistance was provided based on what the law is.[1] *See Padilla*, 559 U.S. at 368–69 (concluding counsel deficiently performed by advising a defendant to accept a plea agreement where "the consequences of [defendant's] plea could easily be determined from reading the [relevant] statute…and his counsel's advice was incorrect.") Moreover, they overlook the basis for this Court's holding in *Miller*. *Miller* notes that an attorney's representation can be unreasonable

---

[1] Citing *Hinton*, 571 U.S. at 274, our dissenting colleagues assert "there is no indication that Anderson's attorney failed to perform basic research" regarding parole eligibility and thus he could not have unreasonably performed under *Strickland*. *Infra* ¶¶ 40–41. But basic research would ordinarily have included reading A.R.S. § 41-1604.09(I), which unquestionably made Anderson ineligible for parole. Furthermore, researching decisions published in the years before Anderson's sentence—which address parole eligibility more directly than this Court did in *State v. Wagner*, 194 Ariz. 310, 313 ¶ 11 (1999)— would, at the very least, cast doubt on eligibility. *State v. Rosario*, 195 Ariz. 264, 268 ¶ 26 (App. 1999) ("The Arizona [L]egislature enacted laws effective January 1, 1994, eliminating the possibility of parole for crimes committed after that date."); *State v. Jensen*, 193 Ariz. 105, 108 ¶ 21 (App. 1998) (noting that § 41-1604.09 "provides for parole eligibility of persons incarcerated for felonies committed before January 1, 1994"). But the prevailing confusion surrounding parole would taint any attorney's research at the time, *see* Part II(A) ¶ 17, which is why the circumstances of this case are unique and why this Court addresses them here.

under prevailing professional norms even when the legal community has uniformly made the same error. 251 Ariz. at 104 ¶ 14. But, unlike this case, the attorney's performance in *Miller* was *not* serious error. *See* 251 Ariz. at 103–04 ¶ 15.

**¶33** To prove prejudice under the second *Strickland* prong, a "defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 104 ¶ 17 (quoting *Strickland*, 466 U.S. at 694). When a defendant receives erroneous advice, he can "establish prejudice in the rejection of a plea offer" under the second part of the *Strickland* test if he can show "a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer and declined to go forward to trial." *Donald*, 198 Ariz. at 414 ¶ 20 (citation omitted) (internal quotation marks omitted); *accord Lafler*, 566 U.S. at 169.

**¶34** In Rule 32 proceedings, a defendant states a colorable claim entitling him to an evidentiary hearing when "he has alleged facts which, if true, would *probably* have changed the verdict or sentence." *Amaral*, 239 Ariz. at 220 ¶ 11; *see also State v. Watton*, 164 Ariz. 323, 328 (1990); Ariz. R. Crim. P. 32.13(a) ("The defendant is entitled to a hearing to determine issues of material fact . . . ."). "When doubts exist, 'a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review.'" *Watton*, 164 Ariz. at 328 (quoting *Schrock*, 149 Ariz. at 441).

**¶35** Here, Anderson has presented circumstantial evidence of a plea agreement: the personal letters containing contemporaneous references to a plea agreement. It is unclear from the record whether the trial court had copies of these documents or had sufficient time to review them. Whether Anderson can prove a plea offer was made and, if so, that he would have taken it but for his attorney's deficient advice, he has presented enough evidence for us to conclude he should be given an opportunity to establish the existence of an offered plea agreement at an evidentiary hearing.

## III.    CONCLUSION

**¶36**        Anderson's IAC claim is neither precluded nor untimely. We vacate the court of appeals' decision, vacate the trial court's order, and remand the case to the trial court for an evidentiary hearing.

BEENE, J., joined by MONTGOMERY, J., dissenting:

¶37        At the outset, we agree with the majority that Anderson's claims are neither untimely nor precluded.  *Supra* Part II(A) & (B).  We disagree, however, with the majority's analysis regarding the deficiency prong in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *Supra* ¶¶ 29–32.  For that reason, we dissent.

¶38        The majority concludes that "Anderson's attorney's performance was deficient under *Strickland* because his error constituted incorrect advice on a significant issue relating to Anderson's potential sentence if convicted—even if other attorneys were giving similarly incorrect advice at the time."  *Supra* ¶ 31.  The majority, however, does not explain how an attorney conforming to the prevailing professional norms acted objectively unreasonably under the circumstances.  Instead, the majority labels the error as "a serious error affecting Anderson's ability to intelligently consider the alleged plea offer."  *Supra* ¶ 31.  But there is no explanation regarding what makes the trial counsel's error "serious" enough to fall "'below an objective standard of reasonableness' based on the 'practice and expectations of the legal community.'"  *Supra* ¶ 29 (quoting *State v. Miller*, 251 Ariz. 99, 102 ¶ 10 (2021)).

¶39        If the "seriousness" of the error is that Anderson is subject to a life term without parole rather than with parole, then that conclusion is one of prejudice, not deficiency.  *See Strickland*, 466 U.S. at 694 (noting the prejudice prong of an IAC claim asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  And we are bound by the Supreme Court's interpretation of the Sixth Amendment and must therefore keep *Strickland*'s two-prong analysis intact.  *See* U.S. Const. art. VI; *State v. Soto-Fong*, 250 Ariz. 1, 9 ¶ 32 (2020) ("This Court . . . is bound to follow applicable holdings of United States Supreme Court decisions.").

¶40        Alternatively, if the seriousness of the error is that Anderson could not intelligently consider an alleged plea bargain, then the error is one of performance.  But when it comes to deficient performance, the Supreme Court has consistently looked to prevailing professional norms to ascertain what is objectively reasonable performance under the circumstances.  *See, e.g., Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing

professional norms."); *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010) (finding deficient performance where defense counsel did not warn client of possible adverse immigration consequences stemming from a guilty plea, reasoning that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation"). Moreover, and critically here, deficiency is analyzed from an attorney's perspective. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, *and to evaluate the conduct from counsel's perspective at the time*." (emphasis added)). And under the Supreme Court's deficiency prong, "[a]n attorney's ignorance of a point of law that is fundamental to his case *combined with his failure to perform basic research on that point* is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (emphasis added).

**¶41**       Here, there is no indication that Anderson's attorney failed to perform basic research. The Arizona Legislature conveyed its 1993 parole restrictions via a negative inference, not an affirmative statement. *See* A.R.S. § 41-1604.09(I) (1993) ("This section [describing parole eligibility and classifications] applies only to persons who commit felonies before January 1, 1994."). And this negative inference may only be found in Title 41, rather than Title 13—which contains Arizona's criminal code. Though Anderson's attorney may have been ignorant of the fact that the legislature had obliquely abolished parole through Title 41 rather than Title 13, there is no suggestion he failed to "perform basic research on that point." In fact, had Anderson's attorney researched the punishment for first degree murder, he would have reasonably concluded that his client *was* eligible for parole. In *State v. Wagner*, 194 Ariz. 310, 313 ¶ 11 (1999), published by this Court the year before Anderson's sentence—and five years after the legislature abolished parole—we unequivocally concluded that

> Arizona's [first degree murder sentencing] statute . . . states with clarity that the punishment for committing first degree murder is either death, natural life, or life in prison *with the possibility of parole*. Thus, a person of ordinary intelligence can easily determine the range of punishment he or she faces for committing first degree murder.

(Emphasis added.)[2]

**¶42**      At bottom, this case does not present an "inexcusable mistake of law" as defined in *Strickland*. *See Hinton*, 571 U.S. at 275. To be sure, in *Miller*, this Court wrote that "[w]e are not averse to Miller's argument that a lawyer's representation can be unreasonable under prevailing professional norms even when the legal community has uniformly made the same error." 251 Ariz. at 103 ¶ 14. Similarly, the Supreme Court noted in *Padilla* that prevailing professional norms—in the form of guides such as ABA standards—are "not 'inexorable commands.'" 559 U.S. at 367 (quoting *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009)). But neither we nor the Supreme Court have explained how adhering to prevailing professional norms could be objectively *unreasonable*. *Cf. Miller*, 251 Ariz. at 103 ¶ 14; *Padilla*, 559 U.S. at 367. And even if this Court wishes to expand on the deficiency prong, it may only do so within the confines of Supreme Court Sixth Amendment jurisprudence or within the confines of our own constitution—and no party properly presented a state constitutional claim here. *See* Ariz. Const. art. 2, § 24.

**¶43**      Here, this means that even if the trial court finds a plea offer existed, it would still need to find that Anderson's trial attorney made an inexcusable mistake of law. Under binding federal precedent, a legal mistake is only inexcusable if it violated prevailing professional norms and was unreasonable under the circumstances at the time. *Miller*, which the majority relies on, is instructive. In *Miller*, we held that a failure to object to an incorrect jury instruction "widely used by the legal community at the time of trial and appeal" did not constitute deficient performance. 251 Ariz. at 101 ¶ 1, 104 ¶ 16. The jury instruction in question was from the Revised Arizona Jury Instructions (the "RAJI") for death penalty sentencing statutory mitigators. *Id.* at 101 ¶ 3. Miller's attorney failed to object to language within the RAJI that may have led to the instruction being more strictly construed against Miller. *Id.* at 103 ¶ 11.

---

[2] Despite the contrary decisions the majority cites, *supra* ¶ 32 n.1, an intermediate appellate court's contradictory statement does not control over a supreme court's pronouncements. The above-quoted language in *Wagner* engenders no uncertainty, and we see no reason why it would lead an attorney to rely on intermediate appellate decisions.

**¶44**        In holding that Miller's attorney's performance was not deficient in failing to object, the Court noted that "Miller's lawyers acted within prevailing professional norms." *Id.* ¶ 13. The Court reasoned that the RAJI "was created by the State Bar of Arizona Criminal Jury Instruction Committee, which is comprised of judicial officers, defense lawyers, and prosecutors." *Id.* Moreover, the Court reasoned that in Miller's case, "the trial judge, not the parties, introduced the RAJI, thus lending it additional credibility." *Id.* Further, Miller did not present any evidence to the PCR court "suggesting that the criminal defense attorney community had questioned the RAJI at the time of Miller's trial and appeal." *Id.* at 104 ¶ 16.

**¶45**        Like in *Miller*, Anderson's defense attorney was operating within prevailing professional norms when he advised Anderson that he was eligible for parole, and thus it was not unreasonable under the circumstances. Although Anderson's attorney was not following inaccurate State Bar guidance, as was the case in *Miller*, he was nevertheless following the professional norm perpetuated by "judicial officers, defense lawyers, and prosecutors." *See id.* at 103 ¶ 13. Indeed, as the PCR court noted, the evidence that Anderson did present for his PCR—the affidavit from his trial counsel—lends credence to the notion that the prevailing norm was a belief that parole was still in existence.

**¶46**        In short, until the Supreme Court speaks on what makes an attorney's adherence to the prevailing professional norms objectively unreasonable under the federal constitution—or a state constitutional claim is properly before us—we are unable to deviate beyond the framework set forth in *Strickland* and its progeny. For the foregoing reason, and with the utmost respect for our colleagues, we dissent.