**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| EUGENE ALLEN DOERR, | Nos.   09-99026 |
| | 10-99007 |
| *Petitioner-Appellant*, | |
| | D.C. No. |
| v. | 2:02-cv-00582- |
| | PGR |
| DAVID SHINN, Director, | |
| | |
| *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

| | |
|---|---|
| EUGENE ALLEN DOERR, | No.   20-99002 |
| | |
| *Petitioner-Appellee*, | D.C. No. |
| | 2:02-cv-00582- |
| v. | JJT |
| | |
| DAVID SHINN, Director, of the Arizona Department of Corrections; CHARLES GOLDSMITH, Warden, Arizona State Prison - Eyman Complex, | |
| | |
| *Respondents-Appellants.* | |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted May 23, 2024
San Francisco, California

Filed January 29, 2025

Before:  William A. Fletcher, Danielle J. Forrest, and Holly
A. Thomas, Circuit Judges.

Opinion by Judge W. Fletcher;
Dissent by Judge Forrest

## SUMMARY[*]

### Habeas Corpus / Death Penalty

In Eugene Allen Doerr's appeal from the district court's partial denial of his federal habeas petition challenging his death sentence, the panel granted Doerr's motion to remand to the district court with instructions to stay and abey the federal petition under *Rhines v. Weber*, 544 U.S. 269 (2005), in order to allow Doerr to present to the state court in a second postconviction petition his claim of ineffective assistance of counsel at sentencing and his claim of

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

intellectual disability under *Atkins v. Virginia*, 536 U.S. 304 (2002).

The Supreme Court in *Rhines* approved a stay and abeyance procedure in order to allow habeas petitioners to exhaust claims in state court that had not previously been presented there, and to do so without dismissing their federal habeas petition or running afoul of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996.

The panel held that the *Rhines* criteria are applicable to Doerr's federal habeas petition. Concerning respondents' contention that Doerr's sentencing-phase ineffective assistance claim is procedurally barred under Ariz. Crim. P. 32.2(a)(3) and "technically exhausted" in state court, the panel explained (1) it is not clear that the Arizona courts would decline to entertain Doerr's second postconviction petition based on an application of Rule 32.2(a)(3), and (2) principles of comity and federalism counsel against a federal court substituting its judgment for that of the state courts. The panel wrote that *Rhines* also applies to Doerr's *Atkins* claim, which respondents have not argued is precluded by Rule 32.2(a)(3). When the Arizona Supreme Court denied review of Doerr's petition for postconviction relief in 2002, the Supreme Court had not yet decided *Atkins*.

The panel held that as to both the sentencing-phase ineffective assistance claim and the *Atkins* claim, Doerr has satisfied the three requirements for a *Rhines* stay and abeyance: good cause for not previously bringing the claims in state court, the claims are potentially meritorious, and no indication of intentionally dilatory litigation tactics.

Judge Forrest dissented. She wrote that, applying Rule 32.2(a)(3) as Arizona courts have interpreted it, it is clear

that they would hold Doerr's sentencing-phase ineffective assistance claim is procedurally barred; therefore, the sentencing-phase ineffective assistance claim was technically exhausted and a *Rhines* stay is not available. Noting that Doerr's federal habeas petition does not contain an *Atkins* claim, she wrote that because a *Rhines* stay specifically eliminates timeliness problems for mixed petitions that include pending unexhausted federal claims, a *Rhines* stay is inapplicable where, as here, the petition contains only exhausted claims.

## COUNSEL

Charlotte G. Merrill (argued) and Amanda C. Bass, Assistant Federal Public Defenders; Jon M. Sands, Federal Public Defender; Federal Public Defender's Office, Phoenix, Arizona; for Petitioner-Appellant.

Jason P. Gannon (argued), Assistant Attorney General, Capital Litigation Section; Jason D. Lewis, Deputy Solicitor General, Section Chief of Capital Litigation; Kristin K. Mayes, Attorney General; Office of the Arizona Attorney General, Tucson, Arizona; Ginger Jarvis, Former Unit Chief Counsel, Capital Litigation Section; Jeffrey L. Sparks, Former Deputy Solicitor General, Section Chief of Capital Litigation; Mark Brnovich, Former Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Respondents-Appellees.

# OPINION

W. FLETCHER, Circuit Judge:

In 1996, Eugene Allen Doerr was found guilty by a jury of the kidnaping, sexual assault, and murder of Karen Bohl. An Arizona state court judge sentenced him to death.

After petitioning unsuccessfully for postconviction relief in state court, Doerr filed a federal habeas petition that the district court ultimately granted in part and denied in part. In October 2022, while Doerr's appeal from the partial denial of his federal habeas petition was pending in this court, he moved for a stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to present claims to the state court in a second postconviction petition.

For the reasons that follow, we grant Doerr's motion and remand this case to the district court with instructions to stay and abey Doerr's federal habeas petition.

## I. Factual and Procedural Background

In September 1994, two Phoenix police officers responded to a 911 call by Doerr. They found him in his apartment with the body of Karen Bohl, who had been brutally murdered. *State v. Doerr* (*Doerr I*), 969 P.2d 1168, 1171–72 (Ariz. 1998). Doerr was convicted of Bohl's murder two years later by a Maricopa County jury, and the trial judge sentenced him to death. His conviction and sentence were affirmed by the Arizona Supreme Court in 1998. *Doerr I*, 969 P.2d at 1184.

Doerr filed his first petition for postconviction relief in Arizona state court in September 2000. Doerr claimed in the petition that his trial counsel had provided ineffective

assistance during the guilt phase of his proceeding by failing to challenge the State's evidence that Doerr had premeditated the murder, and by relying instead on a speculative claim that "a third party could have entered the apartment, murdered [Bohl], and injured [Doerr]." *Doerr I*, 969 P.2d at 1173. Doerr did not claim in the petition that trial counsel had provided ineffective assistance during the sentencing phase of his proceeding.

The Arizona trial court dismissed Doerr's petition, holding that "the evidence at trial made clear that the defendant's intoxication was voluntary and thus cannot be used to rebut or negate the evidence of premeditation." The Arizona Supreme Court denied review in March 2002.

Doerr filed his federal habeas petition the following month. As amended, and as relevant here, Doerr's federal habeas petition claims that his trial counsel provided ineffective assistance at his sentencing by failing to make a reasonable investigation of mitigating evidence and by failing to impeach Victor Rosales, a jailhouse informant who testified during the sentencing phase.

The district court denied Doerr's federal habeas petition, finding his claim of ineffective assistance at sentencing procedurally defaulted. A procedurally defaulted claim is a claim "that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). A petitioner's claim is procedurally defaulted if a state court would refuse to consider the claim "because the prisoner ha[s] failed to meet a state procedural requirement" for presenting the claim. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Federal habeas courts ordinarily cannot hear procedurally defaulted claims unless

the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation." *Id.* at 750.

The district court determined that Doerr's claim of ineffective assistance at sentencing was procedurally defaulted because Doerr did not raise the claim in his state postconviction petition and because Arizona Rule of Criminal Procedure 32.2(a)(3) generally precludes Arizona courts from hearing postconviction claims that were or could have been raised in a prior postconviction petition. Ariz. R. Crim. P. 32.2(a)(3). Doerr argued that any procedural default should be excused because his state postconviction counsel performed deficiently in failing to raise the claim that his trial counsel had provided ineffective assistance at sentencing. The district court rejected the argument, holding that ineffective assistance of state postconviction counsel "does not constitute cause to excuse a procedural default." The district court wrote that "[t]he fact that the [postconviction] proceeding was Petitioner's first and only opportunity to assert claims of [ineffective assistance] at trial and on appeal does not change the analysis."

Doerr appealed from the district court's denial of his federal habeas petition. While his appeal was pending, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), holding that ineffective assistance of state postconviction counsel is cause to excuse the procedural default during a postconviction proceeding of "a substantial claim of ineffective assistance at trial" if the postconviction proceeding is the petitioner's first opportunity to raise that claim. *Id.* at 17. *Martinez* effectively eliminated the ground upon which the district court had based its ruling that Doerr's procedural default could not be excused.

One year after the Supreme Court decided *Martinez*, our circuit held en banc that for "procedurally defaulted claims, to which *Martinez* is applicable," a federal habeas court "should allow discovery and hold an evidentiary hearing where appropriate to determine whether there was 'cause' under *Martinez* for the state-court procedural default." *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013) (en banc). Based on *Martinez* and *Detrich*, we remanded Doerr's federal habeas petition to the district court to allow it to reconsider Doerr's ineffective assistance claim with the benefit of *Martinez*'s instruction that the ineffective assistance of postconviction counsel can constitute cause to excuse a procedural default of a claim of ineffective assistance of trial counsel and to allow it to accept new evidence on that issue as authorized by *Detrich*. We later expanded the scope of the remand to allow the district court to consider a claim that in sentencing Doerr to death, the Arizona Supreme Court improperly discounted mitigating evidence based on the lack of a "causal nexus" between the mitigating evidence and the crime. *See McKinney v. Ryan*, 813 F.3d 798, 816 (9th Cir. 2015) (en banc).

During the sentencing phase of Doerr's trial, his counsel had presented minimal mitigating evidence. On remand from our court, the district court received a great deal of mitigating evidence that had not been presented at sentencing. The evidence included "evaluations from a new set of medical and mental health experts; school records and the complete records from the [Illinois Department of Children and Family Services]; declarations of lay witnesses, including Doerr's sister and ex-wives; . . . and declarations from members of the defense team." *Doerr v. Ryan* (*Doerr II*), No. 02-cv-582, 2021 WL 2826151, at \*20 (D. Ariz. July 7, 2021). The evidence included expert

reports that Doerr "suffers from 'significant brain injury'" and has an intellectual disability. *Id.* at *21.

The evidence also included declarations challenging testimony that had been provided during the sentencing phase by Victor Rosales, a jailhouse informant. Rosales had testified that he had been Doerr's cellmate and that Doerr had told him about the murder and had "described playing with the victim's blood." The state trial court and the Arizona Supreme Court both relied on Rosales's testimony—in particular, his testimony describing Doerr as "playing with the victim's blood"—in finding that Doerr "relish[ed]" the murder, one of the aggravating circumstances that supported a death sentence under Arizona law. *See Doerr I*, 969 P.2d at 1179–80. On remand from our court, Doerr presented to the district court a declaration from Rosales "acknowledg[ing] that he was never Doerr's cellmate" and a declaration from Doerr's actual cellmate that "Rosales read all of Doerr's police reports and paperwork so that he would be able to 'put together a story the prosecution would want' and get a deal in his own case." *Doerr II*, 2021 WL 2826151, at *21, *29.

None of the evidence described in the previous two paragraphs had been presented to the state court in connection with Doerr's first postconviction petition in state court. After considering this evidence, the district court again denied relief on Doerr's claim of ineffective assistance of trial and postconviction counsel. However, it granted relief on Doerr's claim that the Arizona Supreme Court improperly discounted mitigating evidence, contrary to our holding in *McKinney*. *Id.* at *1, *56. The district court declined to consider another claim Doerr sought to add to his federal habeas petition, in which Doerr argued that he was ineligible for death due to intellectual disability under *Atkins*

*v. Virginia*, 536 U.S. 304 (2002).  *Doerr II*, 2021 WL 2826151, at *3.  The district court held that it could not consider this claim because it fell outside the scope of our post-*Martinez* remand.  *Id.*

Doerr appealed from the district court's partial denial of his habeas petition.  His arguments on appeal relied on the new sentencing-phase evidence that he presented in the district court under *Martinez* and *Detrich* following our post-*Martinez* remand.

The Supreme Court changed the law again while Doerr's appeal was pending in our court.  In 2022, the Court held in *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022), that because "state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner," "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."  *Ramirez* effectively reversed our decision in *Detrich* that had allowed federal habeas petitioners to present new evidence in federal court in support of a *Martinez* claim that postconviction counsel had been ineffective.

The holding of *Ramirez* dramatically affected Doerr's ability to litigate his ineffective assistance claim in federal court.  Under *Ramirez*, the new evidence Doerr presented to the district court in support of his ineffective assistance claim cannot be considered by a federal court because it was not first presented to the state court.  *Ramirez* restricts Doerr to the evidence presented in state court even though the evidence that was not presented in that court, due to the fault of postconviction counsel, is the basis for his claim of ineffective assistance by that counsel.  That is, after *Ramirez*,

the evidence supporting Doerr's ineffective assistance claim in federal court is limited to the evidence presented by the state court counsel charged with providing ineffective assistance, despite the fact that Doerr's claim depends on the evidence that this counsel did *not* present. Doerr will be restricted to that previously presented evidence unless he is allowed to return to state court to present the new evidence upon which his claim of ineffective assistance depends.

In order to comply with the requirement of *Ramirez* that evidence in support of his federal habeas claim of ineffective assistance must first be presented in state court, Doerr moved in our court for a stay and abeyance of his federal habeas petition under *Rhines* so he can return to state court and file a second state petition for postconviction relief. In support of his second postconviction petition in state court, Doerr would seek to present to that court essentially the same evidence he has already submitted to the federal district court. Doerr has indicated to us that if a stay and abeyance order were granted, he would also seek to present, for the first time in state court, his claim that he is ineligible for the death penalty due to intellectual disability under *Atkins*.

We heard argument and solicited supplemental briefing from the parties on Doerr's motion.

## II.  Discussion

### A.  *Rhines v. Weber*

For the reasons that follow, we conclude that the criteria of *Rhines v. Weber* are applicable to Doerr's federal habeas petition.

The Supreme Court in *Rhines* approved a stay and abeyance procedure in order to allow habeas petitioners to exhaust claims in state court that had not previously been

presented there, and to do so without dismissing their federal habeas petition. *Rhines* provides a procedure under which a federal habeas petitioner can exhaust such claims without running afoul of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Rhines*, 544 U.S. at 275.

As described above, in his initial state court postconviction petition Doerr claimed ineffective assistance of counsel only during the guilt phase of his trial. He did not claim ineffective assistance during the sentencing phase. If Doerr returns to state court with a second postconviction petition seeking to present his sentencing claim, an Arizona rule of criminal procedure may potentially bar the claim as procedurally defaulted in state court. *See* Ariz. R. Crim. P. 32.2(a)(3).

In their supplemental briefings, the parties agree that a *Rhines* stay and abeyance order is available if Doerr's sentencing-phase ineffective assistance claim is unexhausted. Respondents contend that the claim is exhausted for purposes of *Rhines*. In their view, Doerr's failure to raise his sentencing-phase ineffective assistance claim in his first postconviction petition bars him from bringing that claim in a second postconviction petition, thereby rendering the claim both procedurally barred and "technically exhausted" in state court. *See* Ariz. R. Crim. P. 32.2(a)(3); *Coleman*, 501 U.S. at 732. However, it is not clear that respondents are correct. That is, it is not clear that the Arizona courts would decline to entertain Doerr's second state postconviction petition based on an application of Rule 32.2(a)(3).

The doctrine of state-court procedural default is based on the principle that federal courts generally "will not review a

question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. A federal habeas claim is deemed procedurally defaulted in state court when "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). That procedural bar must in turn be based on a rule that is "firmly established and regularly followed" by the state courts. *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (quoting *James v. Kentucky*, 446 U.S. 341, 348 (1984)).

The exhaustion doctrine in federal habeas law is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Id.* at 731. A petitioner who has failed to comply with a valid state-court procedural rule for presenting federal claims in state court generally cannot later obtain relief in federal court on those claims. "Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity [for] the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" *Id.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *see also Ramirez*, 596 U.S. at 375–76 ("[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not

previously present to the state courts in compliance with state procedural rules.").

In the case before us, we do not know whether the Arizona courts would enforce the Arizona procedural default rule against Doerr based on his failure to raise in his first postconviction petition his claim of ineffective assistance at sentencing. Respondents ask us to conclude that the Arizona courts would apply Rule 32.2(a)(3) and would refuse to consider Doerr's claim of ineffective assistance at sentencing presented in a second postconviction petition. However, those courts have not yet been presented with that petition.

We have held that the rule of procedural default applies only when "'it is clear that the state court would hold the claim procedurally barred.'" *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)); *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005). Two Arizona Supreme Court cases indicate that "it is not clear that the Arizona courts would hold" that Doerr's ineffective assistance claim in a second postconviction petition is barred because of his failure to raise it in his first petition. *Cassett*, 406 F.3d at 623.

In *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), the Arizona Supreme Court excused a postconviction petitioner's noncompliance with Arizona Rule of Criminal Procedure 32.2(a)(3), the same procedural rule at issue here. Before the filing of the postconviction petition on appeal at issue in *Diaz*, two previous attorneys had filed notices of intent to submit postconviction petitions on Diaz's behalf. *Id.* at 1070. One of the attorneys then filed an untimely petition, which was dismissed because of its untimeliness. *Id.* at 1070. Though the other attorney filed a notice of intent to

file a petition, it is unclear whether he ever actually filed the petition. Diaz's third postconviction petition was summarily denied by the state trial court as precluded by Rule 32.2(a)(3) on the ground that the ineffective assistance claim he sought to raise in the petition could have been raised in the two earlier petitions if they had been timely filed. *Id.*

The Arizona Supreme Court reversed. It excused Diaz's noncompliance with Rule 32.2(a)(3), holding that Diaz had been "deprived of th[e] opportunity" to assert his ineffective assistance claim "through no fault of his own." *Id.* at 1071. The Court wrote that because Diaz "was blameless regarding his former attorneys' failures to file an initial [postconviction relief] petition, we will not deem his [ineffective assistance] claim waived pursuant to Rule 32.2(a)(3)." *Id.*

*Diaz* tells us that in some circumstances Arizona courts will hold that deficient performance by state postconviction counsel is sufficient to avoid the procedural bar of Rule 32.2(a)(3). The Arizona Supreme Court so held because Diaz was "blameless" for his attorneys' failure to present his claims in earlier petitions. *Id.* Doerr can make precisely that argument to the Arizona courts. He can argue that due to the deficient performance of his original postconviction counsel, he did not assert in his first postconviction petition his claim of ineffective assistance at sentencing.

The Arizona Supreme Court recently expanded *Diaz* in *State v. Anderson*, 547 P.3d 345 (Ariz. 2024), again excusing a postconviction petitioner's noncompliance with Rule 32.2(a)(3). The petitioner in *Anderson* filed a successive state petition for postconviction relief, claiming that his trial counsel had provided ineffective assistance by incorrectly telling Anderson that he would be parole-eligible after 25 years if he were found guilty at trial. *Id.* at 348. Relying on

that incorrect statement of law, Anderson declined a plea agreement. He was then convicted after a trial. More than twenty years later, Anderson learned that his attorney's advice had been wrong and that he was not parole-eligible after 25 years. *Id.*

The Arizona Court of Appeals held that Anderson's claim was precluded by Rule 32.2(a)(3) because he failed to raise it in state postconviction petitions he filed shortly after he was sentenced. *Id.* at 349. The Arizona Supreme Court reversed. It concluded that, like *Diaz*, "[t]his case also present[ed] unusual, albeit different, circumstances" that merited an exception to preclusion. *Id.* at 351. The court found that Anderson's noncompliance was caused by two factors outside his control—the fact that his attorney "incorrectly advised him that, if found guilty, he would be eligible for parole," and the evolution of Arizona's parole law during the pendency of his case. *Id.* at 350. While the Arizona legislature had generally eliminated parole for felony offenses in 1993, state appellate courts continued to hold that felony offenders were eligible for parole until well after Anderson's conviction. *See id.* at 348, 350.

The Arizona Supreme Court noted further that Arizona's Rules of Criminal Procedure excuse the untimely filing of a petition for postconviction relief "if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." *Id.* at 350 (quoting Ariz. R. Crim. P. 32.4(b)(3)(D)). It excused Anderson's noncompliance with Rule 32.2(a)(3) on that ground as well, concluding that "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice [ineffective assistance] claim where the late discovery of the claim's basis would have been excused" by Rule 32.4(b)(3)(D). *Id.* at 351.

Doerr argues that he was similarly "not at fault" for his failure to raise his sentencing phase ineffective assistance claim in his first postconviction petition. *Id.* at 350. Doerr argues that, like Anderson, he failed to raise his ineffective assistance claim in his prior state petition for two reasons— the ineffectiveness of his state postconviction counsel in failing to identify his claim, and the evolution of the relevant law. First, Doerr's postconviction counsel failed to present a claim of ineffective assistance at sentencing despite the availability of a great deal of highly relevant evidence that would have supported that claim. Second, Doerr pursued in federal court his claim of ineffective assistance at sentencing. That claim was first denied by the district court as procedurally defaulted. Then, after *Martinez* and *Detrich* were decided, the district court heard evidence supporting Doerr's claim of ineffective assistance of postconviction counsel who had defaulted the claim of ineffective assistance at sentencing. But federal courts are now barred by *Ramirez* from hearing that evidence so long as Doerr has not first presented it in state court. *Ramirez*, 596 U.S. at 382.

Our dissenting colleague suggests that we have misconstrued *Diaz* and *Anderson*, and that we should hold that these cases are limited to "the specific circumstances that they presented." Dissent at 29. We respectfully disagree. The Arizona Supreme Court in *Anderson* emphasized at numerous points the need for flexibility in balancing the preclusive effects of Rule 32.2(a)(3) with the demands of fairness and justice. *See, e.g.*, *Anderson*, 547 P.3d at 351 ("But Rule 32 is also 'designed to accommodate the unusual situation where justice ran its course and yet went awry.'" (quoting *State v. Carriger*, 692 P.2d 991, 995 (Ariz. 1984))); *id.* ("[I]t would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice

IAC claim where the late discovery of the claim's basis would have been excused." (internal quotation omitted)); *id.* at 352 ("[W]e determine Anderson's claim is not precluded in view of our duty to 'construe [rules of criminal procedure] to secure . . . fairness in administration . . . and to protect the fundamental rights of the individual . . . .'" (quoting Ariz. R. Crim. P. 1.2)).  That flexibility is precisely what led the court to apply the reasoning from *Diaz* to the "unusual, *albeit different*, circumstances" in *Anderson*.  *Id.* at 351 (emphasis added).

Presented with Doerr's own unusual circumstances, an Arizona court may well choose to do what it did in *Diaz* and in *Anderson*.  Given the existence of *Diaz* and *Anderson*, we cannot confidently predict what an Arizona court will do.  As Justice Robert Jackson wrote in a different context, we should ask rather than tell the state court how it will rule on a question of state law.  *See Herb v. Pitcairn*, 324 U.S. 117, 127–128 (1945) ("[I]t seems consistent with the respect due the highest courts of states of the Union that they be asked rather than told what they have intended.").

We find unpersuasive respondents' reliance on the Arizona Supreme Court's statement in *Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002), that when a petitioner asserts an ineffective assistance claim in one postconviction petition and a different ineffective assistance claim in a second postconviction petition, "preclusion is required without examining facts." *Id.* at 1071.  *See* Dissent at 25 (citing an Arizona Court of Appeals opinion analyzing this statement in *Stewart*).  This statement is dictum, for petitioner Smith had not brought his ineffective assistance claim in successive state postconviction petitions.  *See Stewart v. Smith*, 536 U.S. 856, 857 (2002) (per curiam).  Further, the court cited no support for its statement, and we are aware of no

subsequent case from the Arizona Supreme Court relying on this dictum from *Smith.* Finally, and most important, *Smith*'s 2002 dictum is irreconcilable with the Arizona Supreme Court's later holdings in *Diaz* and *Anderson* in 2014 and 2024.

We agree with our colleague that neither a defendant's absence of fault nor ineffective assistance of postconviction counsel by itself "automatically warrants an exception to preclusion." Dissent at 30. We do not, and need not, make such a sweeping claim. That is, we do not suggest that the ineffectiveness of Doerr's postconviction counsel "automatically" justifies an exemption from preclusion under Rule 32.2(a)(3). It is enough for Doerr to show that "it is not clear that the Arizona courts would hold" his claim barred. *Cassett*, 406 F.3d at 623. In other words, if there is a nontrivial possibility that an Arizona court would find an exception to the preclusion bar of Rule 32.2(a)(3), we should not on our own hold that the bar applies.

Ultimately, "[p]rinciples of comity and federalism counsel against substituting our judgment for that of the state courts." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds by Cullen v. Pinholster*, 563 U.S. 170 (2011). The dissent responds to these concerns by pointing out that "the very concept of technical exhaustion requires federal courts to analyze how state courts would handle claims that were not presented to them." Dissent at 30. But where, as here, it is unclear how the Arizona courts would handle a claim, we are not required to answer in their place. We can instead permit Doerr to return to state court and allow the state court to provide that answer. *See Blake v. Baker*, 745 F.3d 977, 983–84 (9th Cir. 2014) (finding that "a *Rhines* stay and abeyance does not undercut the interests of comity and federalism embedded in our

habeas jurisprudence" because "*Rhines* only permits a petitioner to return to state court").

Finally, *Rhines* also applies to Doerr's *Atkins* claim of ineligibility for death due to intellectual disability. Respondents have not argued that Doerr's *Atkins* claim is precluded by Rule 32.2(a)(3). Under Arizona law, Rule 32.2(a)(3) applies to claims that were "raised, or could have been raised," in a prior state postconviction petition. *State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002). When the Arizona Supreme Court denied review of Doerr's petition for postconviction relief in March 2002, the Supreme Court had not yet decided *Atkins*. *See Atkins*, 536 U.S. 304. Doerr thus could not have raised his *Atkins* claim in that petition.

## B.  Application of the *Rhines* Criteria

To obtain a stay and abeyance order under *Rhines*, a federal habeas petitioner must show:  (1) there is "good cause for his failure" to present the claim in state court; (2) the claim is "potentially meritorious"; and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Doerr has satisfied all three criteria for his postconviction petition claim of ineffective assistance at sentencing.

First, the good cause requirement of *Rhines* "ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason" for not previously bringing their claims in state court. *Blake*, 745 F.3d at 982. Good cause "does not require a showing of 'extraordinary circumstances.'" *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017) (quoting *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005)). Even "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily

constitute 'good cause'" under *Rhines*.    *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

We have specifically held "that 'ignorance or inadvertence' on the part of a petitioner's post-conviction counsel" is good cause for a stay and abeyance under *Rhines*. *Dixon*, 847 F.3d at 720–21 (quoting *Coleman*, 501 U.S. at 753–54).  Doerr's failure to present his ineffective assistance at sentencing claim in state court was due to the ignorance or inadvertence of his original state postconviction counsel. That is sufficient to constitute good cause under *Rhines*.  *See also Blake*, 745 F.3d at 981 (sufficient showing of ineffective assistance where "state post-conviction counsel failed to discover, investigate, and present to the state courts the readily available evidence of Blake's abusive upbringing and compromised mental condition").

Second, a "potentially meritorious" claim under *Rhines* is a claim that is not "plainly meritless." *Rhines*, 544 U.S. at 277–78.    The district court issued a certificate of appealability ("COA") after it denied Doerr's claim of ineffective assistance at sentencing.  The COA standard is more demanding than the standard under *Rhines*, for a COA may issue only when there has been a "substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).    Moreover, the potential procedural bar of Rule 32.2(a)(3) does not make Doerr's claim "plainly meritless."  As described above, the Arizona Supreme Court has considered the merits of claims in *Diaz* and *Anderson*, in circumstances that are comparable to the circumstances in Doerr's case.

Third, Doerr has not been intentionally dilatory in seeking a stay and abeyance to present his ineffective assistance claim in state court.  It is undisputed that he first

sought a stay from the district court for this purpose in 2004, long before *Rhines* was decided and just two years after the Arizona Supreme Court denied review of his state petition for postconviction relief. He later renewed his request to the district court for a stay and abeyance to bring his unexhausted *Atkins* claim in state court. He filed the present motion for a stay and abeyance in our court only a few months after the Supreme Court decided *Ramirez*.

Doerr has similarly satisfied all three *Rhines* criteria for his *Atkins* claim. First, there is good cause for his failure to have previously presented this claim to the state court. An *Atkins* claim is based on intellectual disability at the time a death sentence is carried out. In many circumstances (depending on the nature of the claimed intellectual disability), there may not be a ripe *Atkins* claim until the scheduled execution date is imminent or at least reasonably close. Second, Doerr has presented enough in his motion to surmount the relatively low bar of showing that his *Atkins* claim is "potentially meritorious." Third, for essentially the same reasons that Doerr satisfies the first criterion, there is no basis to conclude that Doerr has been "intentionally dilatory" in bringing his *Atkins* claim.

We therefore conclude that Doerr has met the requirements of *Rhines* for a stay and abeyance of his federal habeas petition.

## III. Conclusion

Doerr's motion to remand to the district court is granted. We remand to that court with instructions to stay and abey consideration of Doerr's habeas petition in order to allow him to present to state court his claim of ineffective

assistance of counsel at sentencing and his claim of intellectual disability under *Atkins*.

**REMANDED.**

---

Forrest, J., dissenting.

Everyone agrees that a *Rhines* stay, which pauses federal habeas proceedings to allow the petitioner to exhaust a federal claim in state court, is permissible only where a claim is truly unexhausted; such a stay is not permissible where a claim is technically exhausted because further state-court review is barred. Primarily relying on *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), and *State v. Anderson*, 547 P.3d 345 (Ariz. 2024), the majority concludes that Petitioner Eugene Allen Doerr's ineffective-assistance-of-counsel (IAC) claim at issue in this appeal is unexhausted because it is unclear that Arizona courts would deem this claim procedurally barred. I respectfully dissent because the narrow exception to Arizona's procedural-default rule recognized in *Diaz* and *Anderson* does not apply here. Therefore, I would not revisit our prior denial of a *Rhines* stay and would instead proceed to decide the merits of Doerr's habeas petition.

## I. *Rhines* Stay

A federal court may not consider a state prisoner's habeas petition unless the petitioner satisfies the total exhaustion rule by first exhausting all available remedies in state court for each claim raised. 28 U.S.C. § 2254(b)(1)(A); *Rhines v. Weber*, 544 U.S. 269, 274 (2005). When a petitioner presents a mixed habeas petition that contains exhausted and unexhausted claims, a *Rhines* stay allows federal courts to "stay the petition and hold it in abeyance

while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines*, 544 U.S. at 275; *Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016). That is, the *Rhines* stay-and-abeyance procedure "allow[s] petitioners to exhaust their unexhausted claims without losing their place in federal court." *Mena*, 813 F.3d at 910. To obtain a *Rhines* stay, a petitioner must show that he "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

A claim is unexhausted if two things are true: the state court has not been given an opportunity to consider the claim *and* the opportunity to present the claim to the state court is still available. *See Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013); *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). A claim that has not been presented to the state court is nonetheless "*technically exhausted* if 'the court to which the petitioner would be required to present [it] in order to meet the exhaustion requirement would now find the claim[] procedurally barred.'" *Gulbrandson*, 738 F.3d at 992 (emphasis added) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). A petition that includes only exhausted claims—whether factually or technically—is not a mixed petition that properly may be stayed under *Rhines*. *See Rhines*, 544 U.S. at 273, 275; *Mena*, 813 F.3d at 908.

As the majority explains, Doerr asserts in this habeas petition that his sentencing counsel provided ineffective assistance—a claim that he has not presented to the Arizona courts. The question then is whether this is an unexhausted or technically exhausted claim. For this inquiry, we turn to Arizona law.

## II. Arizona's Procedural-Default Rule

Arizona's procedural-default rule precludes any postconviction claim "waived at trial or on appeal, or in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). "[A]ll known claims for relief [must be raised] in a single petition to prevent endless trial-court reviews of the same case." *Anderson*, 547 P.3d at 350. "Generally, 'where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.'" *Id.* (citation omitted). The Arizona Supreme Court and Arizona Court of Appeals have long held that "if a petitioner asserts ineffective assistance of counsel" in a successive petition and has already raised ineffective assistance in an earlier petition, "preclusion is required without examining facts." *Stewart v. Smith*, 46 P.3d 1067, 1071 (Ariz. 2002) (en banc); *State v. Traverso*, 537 P.3d 345, 348 (Ariz. Ct. App. 2023) (applying *Smith*'s preclusion requirement and explaining that "even if [this] requirement were dicta it was intended to provide future guidance in applying the rule set out and thus 'should be followed in the absence of some cogent reason for departing' from it"); *State v. Swoopes*, 166 P.3d 945, 952–53 (Ariz. Ct. App. 2007) (citing *Smith* for the proposition that "because IAC claims 'cannot be raised repeatedly,' and because [the Arizona] [S]upreme [C]ourt has expressed 'a strong policy against piecemeal litigation,' 'preclusion is required without examining facts.'"). Therefore, where ineffective assistance was raised in an initial postconviction petition and then a different theory of ineffective assistance is raised after the

initial petition was adjudicated, the Arizona courts conclude that the successive IAC claim is barred. *See, e.g.*, *Traverso*, 537 P.3d at 347–50; *Swoopes*, 166 P.3d at 952–54.

Given Arizona's preclusion rules regarding successive petitions raising different IAC claims, we have routinely held that newly raised IAC claims in federal habeas petitions are procedurally defaulted *and technically exhausted*. *See, e.g.*, *Hurles v. Ryan*, 752 F.3d 768, 779–80 (9th Cir. 2014) (holding that a petitioner's IAC claims were procedurally defaulted because "he failed to raise them before the Arizona Supreme Court" and "[i]f [he] presented the[] IAC claims to the Arizona Supreme Court now, the court would dismiss them as waived"); *Gulbrandson*, 738 F.3d at 993 (denying habeas relief on an IAC claim where the petitioner failed to present the claim to the Arizona state courts and "[i]f he were to do so now, the claim would be procedurally barred" for "fail[ing] to raise it 'in [a] previous collateral proceeding'" (third alteration in original) (citation omitted)).

## III.   Analysis

Despite Arizona's established law, the majority posits that it is unclear whether Arizona courts would enforce their procedural-default rule in this case. In reaching this conclusion, the majority primarily relies on the Arizona Supreme Court decisions in *Diaz* and *Anderson*, which excused a postconviction petitioner's noncompliance with Rule 32.2(a)(3). Respectfully, the majority misconstrues both decisions.

In *Diaz*, two different attorneys filed a *notice* of postconviction relief on the defendant's behalf, but neither of them followed up and filed a petition. 340 P.3d at 1070. A third attorney did eventually file a petition that included an IAC claim; however, the trial court concluded that the claim

was precluded based on the prior initiation of postconviction proceedings. *Id.* The Arizona Supreme Court vacated the trial court's order given the "unusual circumstances" presented in that case. *Id.* at 1071. The court explained that the defendant "was deprived of th[e] opportunity [to assert his claim earlier] through no fault of his own" because his first two attorneys "failed to file a petition to enable adjudication of the claim." *Id.* Crucially, the court disclaimed any conflict with Rule 32.2 because "[p]ermitting [defendant] to file his first petition to assert an IAC claim under the circumstances here will not result in repeated review of the IAC claim; it would result in its first review." *Id.* The court further explained that "[o]nce the petition is adjudicated, and assuming that [the defendant] does not obtain relief, [his pending claim] and all other claims that [he] might have brought will be precluded and [he] will not be able to raise them in a successive petition." *Id.*

This case is plainly distinguishable from *Diaz*. Doerr now asserts an IAC claim related to his sentencing proceedings. But in September 2000, Doerr filed a state postconviction petition that included an IAC claim challenging his counsel's performance at the guilt phase of trial. The Arizona trial court dismissed that petition on the merits, concluding that the guilt-phase IAC claim was not colorable. This is exactly the type of adjudication that *Diaz* instructed would preclude a defendant from raising claims in later petitions that he might have brought in his first petition. *Id.* (citing *Smith*, 46 P.3d at 1071 ("If the merits were to be examined on each petition, Rule 32.2 would have little preclusive effect and its purpose would be defeated.")). And Doerr's sentencing-phase IAC claim is exactly the type of claim that Arizona law deems waived because it could have been raised in Doerr's first state postconviction petition

along with his guilt-phase IAC claim. Ariz. R. Crim. P.
32.2(a)(3); *Anderson*, 547 P.3d at 350.

Likewise, *Anderson* is distinguishable. There, the
defendant filed two postconviction petitions alleging IAC.
*Anderson*, 547 P.3d at 348. Approximately 20 years later, he
brought a third IAC claim, alleging "that while he was
considering whether to accept a plea agreement to a term of
eighteen to twenty-two years in prison, his trial counsel
advised him that if he did not accept the plea agreement and
was found guilty at trial, parole would be available after he
served twenty-five years." *Id.* The defendant went to trial,
was found guilty of conspiracy to commit murder, and
sentenced to "life without possibility of release until the
service of at least 25 years." *Id.* At the time his counsel
advised him on the plea offer, parole had been abolished in
Arizona for felonies. *Id.* at 352. However, it was not until
immediately before the defendant filed his third
postconviction petition that he learned he was not parole
eligible because when his first two postconviction petitions
were filed "defendants, attorneys, and courts did not know
of or recognize the error [in counsel's advice] due to the
confusion regarding the abolition of parole." *Id.* at 351.

Under these circumstances, the Arizona Supreme Court
recognized that trial counsel's faulty advice regarding the
plea offer was "less an issue of individual IAC as it was a
systemic failure to recognize the effect of the change in the
law regarding parole." *Id.* And because of those "unusual
circumstances," the court concluded that the defendant's
third petition was his first opportunity to raise his previously
unknown IAC claim. *Id.* Again, however, the court made
clear that it was not displacing or creating a broad exception
to the preclusion rule by emphasizing the "extremely rare set
of circumstances" presented in that case concerning "the

pervasive confusion about parole and the extraordinary remedies . . . fashioned to deal with it." *Id.* at 351–52.

Taken together, *Diaz* and *Anderson* recognize a limited unusual-circumstances exception to procedural default where the purpose of Rule 32.2 is not served by its application due to circumstances beyond the defendant's control that prevented presentation of his postconviction claim for decision. As noted, the Arizona Supreme Court expressly couched its holdings in these cases in the specific circumstances that they presented. *Diaz*, 340 P.3d at 1071 ("Our holding in this peculiar scenario does not frustrate Rule 32's preclusion provisions."); *Anderson*, 547 P.3d at 351–52 ("We do not, however, hold Rule 32.1(a)'s exception to the preclusion rule applies broadly to IAC claims based on erroneous advice surrounding plea agreements. Instead, [the defendant's] claim represents an extremely rare set of circumstances in the context of the pervasive confusion about parole and the extraordinary remedies [the court] and the legislature fashioned to deal with it.").

This limited exception does not apply here because there are no comparable "unusual" or "rare" circumstances. Doerr does not dispute that his sentencing-phase IAC claim was known when he filed his state postconviction petition that asserted his trial counsel provided ineffective assistance during the guilt phase of his trial. And there is no basis in the record to conclude that his federal habeas petition filed five years after his sentencing "was the first time he could have reasonably raised" his sentencing-phase IAC claim. *Anderson*, 547 P.3d at 351. Thus, unlike in *Anderson*, not applying Rule 32.2's preclusive effect would undermine its purpose of "'requir[ing] a defendant to raise all known claims for relief in a single petition to the trial court, thereby avoiding piecemeal litigation and fostering judicial

efficiency.'" *See id.* (quoting *State v. Petty*, 238 P.3d 637, 641 (Ariz. Ct. App. 2010)). Therefore, a straightforward application of Rule 32.2(a)(3) is called for here.

The majority offers several arguments in support of its conclusion that Doerr's claim is not technically exhausted that fall short.

First, citing *Anderson*, the majority notes that Doerr was not at fault for failing to raise his sentencing-phase IAC claim in his first petition. The Arizona Supreme Court has never indicated that an absence of fault by itself excuses a defendant's failure to raise all known claims that could have been raised in a single postconviction petition. Nor has that court indicated that ineffective assistance of postconviction counsel automatically warrants an exception to preclusion. *See id.* at 350–51.

Second, the majority (and Doerr) suggest that it is unclear how Arizona courts would respond to Doerr's sentencing-phase IAC claim because it has not been presented to them. That the Arizona courts have not reviewed Doerr's second petition cannot support a finding of procedural default because the very concept of technical exhaustion requires federal courts to analyze how state courts would handle claims that were *not* presented to them.[1] *See Coleman*, 501 U.S. at 735 n.1; *Gulbrandson*, 738 F.3d at 992. Notably, in *Cassett* we explicitly applied the technical-exhaustion framework in the context of Arizona's Rule 32.2(a)(3). 406 F.3d at 622 n.5. And while *Cassett* instructs us to examine whether it is clear that Arizona courts would

---

[1] For this reason, the majority's suggestion that "we should ask rather than tell the state court how it will rule on" this issue also stands at odds with our technical-exhaustion caselaw. Maj. Op. at 18.

consider a claim precluded, *see id.* at 623, it does not embolden us to create new exceptions to Arizona's preclusion rules that are not grounded in existing caselaw.

Finally, the majority observes that unless Doerr is allowed to return to state court to present new evidence, he will be limited to the evidence presented by the counsel that he contends provided ineffective assistance. This is true. But the Arizona Supreme Court has weighed this concern with other policy considerations and ultimately "rejected an approach to Rule 32 proceedings that would create 'a never-ending tunnel' in which 'defendants could endlessly litigate effectiveness of counsel by claiming that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation.'" *Anderson*, 547 P.3d at 350–51 (quoting *State v. Mata*, 916 P.2d 1035, 1050 (Ariz. 1996)). Because Rule 32.2(a)(3) requires a defendant to raise all known claims for relief in a single petition, and Doerr's case does not present any "extremely rare" circumstances to excuse his noncompliance with that rule, we must faithfully apply it here. *Id.* at 351.

In sum, applying Rule 32.2(a)(3) as Arizona courts have interpreted it, it is clear that they would hold Doerr's sentencing-phase IAC claim is procedurally barred. Therefore, Doerr's sentencing-phase IAC claim was technically exhausted and a *Rhines* stay is not available to him.

Separate from his sentencing-phase IAC claim, the majority also asserts that Doerr is entitled to a *Rhines* stay so that he can exhaust his *Atkins* claim that was unavailable during his initial state postconviction proceeding. The problem with this reasoning is that Doerr's federal habeas petition does not contain an *Atkins* claim. While Doerr

argues that he is entitled to relief under *Atkins v. Virginia*, 536 U.S. 304 (2002), he has not moved to amend his federal petition to include this as a separate claim. Indeed, his *Atkins* argument is largely framed as establishing cause and prejudice to excuse his procedural default. Because a *Rhines* stay specifically eliminates timeliness problems for mixed petitions that include *pending* unexhausted federal claims, it is inapplicable where, as here, the petition at issue contains only exhausted claims. *King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009). And whereas Doerr has not requested any relief other than a *Rhines* stay, I have no occasion to address the proper procedure, if any, for facilitating exhaustion of a potential *Atkins* claim.

For these reasons, I respectfully dissent from the grant of a *Rhines* stay.